## GILLIS v. COMPAGNIE GENERALE TRANSATLANTIQUE.

### The WINNIPEG.

### No. 13252.

United States Court of Appeals
Ninth Circuit.

Sept. 24, 1952.

Nels Peterson and Frank H. Pozzi, Portland, Or., for appellant.

Wood, Matthiessen, Wood & Tatum, Erskine Wood, Portland, Or., for appellee.

Before HEALY, BONE, and POPE, Circuit Judges.

BONE, Circuit Judge.

This action arose out of a libel *in rem* filed against the M.S. "The Winnipeg." The above named owner appeared in the action and claimed the ship. Appellant's claim against the ship was for injuries sustained by him while engaged in loading the vessel.

Though this court has been furnished with no transcript of the evidence in the cause, it can be gathered from the briefs and the documents in the record filed herein that appellant, a longshoreman, was employed from September 9 to September 10, 1950, by the Oregon Stevedoring Company to load a quantity of fruit aboard "The Winnipeg" from a wharf in Portland, Oregon. Appellant was a "hatch-tender" whose task it was to direct the operator of the winch in lowering the fruit into the hatches of the vessel. "The Winnipeg" was carrying a cargo of fir logs lashed in a single tier to her main deck. The logs covered the entire deck from both sides of the hatches to the rails.

To direct the winch operator it was necessary for appellant to walk from the hatches across the logs to the rail adjoining the dock. While so engaged at night the appellant slipped and fell into the space between the logs and the hatch coaming and was injured. Appellant elected to pursue his remedy by libel against the said vessel pursuant to the Longshoremen's and Harbor Workers' Compensation Act, § 33, 33 U.S.C.A. § 933, alleging that the vessel was unseaworthy and its operators negligent, in that no ladders, passageways or catwalks were provided on or about the tier of logs, that the logs were slippery due to accumulation of oil, water and foreign substances upon them, and that the lighting aboard the ship was inadequate.

Compagnie Generale Transatlantique, a French Corporation, made claim as owner and defended in the cause. The claimant subsequently impleaded the Oregon Stevedoring Company and prayed for indemnity from that company for any liability which might be adjudged.

The trial court found that the manner of deck stowage was usual and customary. It found that whether a thwartships walkway was necessary for the use of the hatch-tender was determined by the longshoremen, and particularly by the hatchtender; that if it is necessary, the longshoremen build it themselves; that such a walkway was not necessary to make the place reasonably safe to work; that by custom and practice it was the obligation of the stevedore company and not of the ship to provide such a walkway. The court further found that a fore and aft catwalk is for the use of sailors at sea; would have been of no use to the appellant; and that the absence of such a catwalk had no causal connection with the appellant's accident. The court also found that the lighting was the same as that usually provided, and that it was adequate and sufficient. It found that there was no evidence of any foreign substance on the logs which caused the accident.

Appellant contends that this is a question of the construction of a written contract and thus may be determined by this court independently of the testimony in the cause. The argument is that the Pacific Coast Marine Safety Code is incorporated into the contract between the owners of "The Winnipeg" and the Oregon Stevedoring Company and thus sets the standard of care for said owners toward longshoremen and a standard of "seaworthiness" for the purposes of this action. Specifically, appellant points out that the finding of the trial court that it was the responsibility of the stevedoring company to provide longshoremen a safe place to work aboard ship is in conflict with the provisions of the saftey code which appellant contends place this obligation upon the ship's owners.

We have no transcript of the testimony in the cause. Only the naked Safety Code is before us. This Code is not free from uncertainties. We cannot presume that the trial court arrived at its finding in a similar vacuum, without aid of testimony placing the Safety Code in its proper setting, showing its practical construction by those bound thereby, or explaining or resolving those provisions which on their face appear confusing and ambiguous. Assuming, without deciding, that a contractual agreement

made by the ship owners with the Stevedoring Company, could operate to increase the duties of the ship to Gillis, yet it is apparent that at the time in question the parties to that agreement might, by mutual consent, express or implied, have abrogated or suspended the contract's operation. In the absence of the testimony we cannot assume that such an abrogation or suspension did not occur.

There is no basis upon which we could set aside the findings. They must stand, and the judgment must be and is affirmed.