**NORTHWEST CAS. CO.**

v.

**KIRKMAN et al.**

Civ. No. 755 G.

United States District Court,
M. D. North Carolina.

March 12, 1954.

Jordan & Wright, Greensboro, N. C., for plaintiff.

York & Boyd, Frazier & Frazier, Smith, Sapp, Moore & Smith, Greensboro, N. C., for defendants.

HAYES, District Judge.

On January 31, 1953 James C. Kirkman while operating a 1949 Ford automobile, the property of Norman S. Grubb, ran into and seriously injured Zeb Pe-

gram, a pedestrian, on West Lee Street in Greensboro, N. C. Grubb had a standard policy of automobile insurance written by the plaintiff which was in force at the time of the accident. This policy of insurance affords coverage with respect to liability imposed by law for bodily injury resulting from the use of the Ford car. The company agrees to defend actions brought against the insured to recover damages for bodily injuries and to pay any judgments obtained against the insured in such actions subject to certain limitations. The policy contains the usual "omnibus clause" and defines the insured persons. (1) The named insured. (2) The additional insureds, being all the persons using the Ford car or responsible for its use, provided the actual use is with the permission of the named insured.

The plaintiff, a citizen and resident of Washington, has brought this suit for a declaratory judgment against James C. Kirkman, the driver of the car and Zeb Pegram, the injured, both being citizens and residents of Greensboro, N. C. and Atlantic Insulation Company, a North Carolina Corporation, by whom Pegram was employed and against Utica Mutual Insurance Co., a New York corporation, it being the Compensation Insurance Carrier for the Atlantic Insulation Co.

Norman S. Grubb is not a party to the suit. The plaintiff admits its obligations to Grubb and no controversy exists between the plaintiff and Grubb.

The sole purpose of this suit is to determine whether the plaintiff is obligated under the policy to defend Kirkman and to satisfy any judgment that may be secured by Pegram or any one claiming under him for damages inflicted on Pegram by Kirkman's operation of the car.

The plaintiff has been called on by the defendant Kirkman to defend him and contending that the policy covers Kirkman as an additional insured and the other defendants make similar contentions. Pegram's leg was broken and he suffered other injuries and he has made claim under the Workmen's Compensation law for compensation under it which accounts for the interest of the other party defendants. The policy of insurance limits liability to $10,000 for bodily injury for each person. The amount in controversy exceeds $3,000, exclusive of interest and cost, and the court has jurisdiction of the subject matter and the parties unless Norman S. Grubb is an indispensable party. If he is an indispensable party the court has no jurisdiction because he would have to be aligned with the plaintiff and no diversity of citizenship would exist because he is a citizen of Greensboro, N. C.

It is necessary to dispose of the question about Grubb being an indispensable party before considering the question of coverage. Pegram alone contends that the court has no jurisdiction and bases his contention largely upon the 4th Circuit cases of Maryland Casualty Co. v. Boyle Construction Co. Inc., 123 F.2d 558, and American Fidelity & Casualty Co. Inc. v. Service Oil Co., 164 F.2d 478, and State Farm Mutual Automobile Ins. Co. v. Hugee, 115 F.2d 298, 132 A.L.R. 188. At the outset it will be observed that in each of the above cases the named insured was joined as a party defendant in the plaintiff's complaint, either as originally filed or as amended. There was no controversy between the insurance carrier and the additional insured with respect to coverage or noncoverage of the additional insured on the grounds of lack of permission and it was conceded in each case that the insurance policy covered the driver of the insured vehicle if it covered the named insured who was the owner of the vehicle. In the Maryland Casualty and the American Fidelity cases litigation was pending at the time in the State Court before the institution of the declaratory judgment suits which presented the identical questions to be determined in the declaratory judgment suit and in the Hugee case suits were threatened which would have raised the same question as presented in the declaratory judgment suit.

In the instant case a real controversy exists whether Kirkman was using the automobile at the time with the permission of the insured; if so the plaintiff is required under the terms of the policy to afford protection to him in defense of this suit and to pay any judgment that may be obtained against him subject to the limitations. If he was using the car without the permission of the insured then no coverage exists as to him and the plaintiff is under no obligation either to defend or to pay any judgment that may be obtained against Kirkman. The determination therefore of this question is of no vital concern to Grubb, nor is its determination conclusive as between the defendants and Grubb.

If Pegram sues Grubb the plaintiff concedes that it must defend him under the policy and if a judgment is obtained against Grubb the plaintiff must pay the judgment subject to the limitations in the policy. Pegram can make out a Prima Facie case against Grubb under General Statutes, § 20–71.1. But on proof by Grubb that Kirkman was not operating the car as his Agent, Pegram would not be able to recover. Travis v. Duckworth, 237 N.C. 471, 75 S.E.2d 309.

■ The instant case is to be distinguished from the above cases in that here no adjudication is sought on the question of Grubb's liability, if any, to Pegram. It only seeks a determination of whether it is required to defend Kirkman against the claim of Pegram and the other defendants. The determination of this question presents a justiciable controversy between the insurance company and the alleged additional insured and the injured claimants. The named insured is not a necessary or indispensable party.

This subject has been exhaustively treated in an opinion by Judge Delehant in Glen Falls Indemnity Co. v. Fredericksen, D.C., 8 F.R.D. 55 and by Judge Moore in Ohio Casualty Ins. Co. v. Maloney, D.C., 44 F.Supp. 312 and by Judge Wyche in Fidelity & Casualty Co. of New York v. Wilson, D.C., in 105 F.Supp. 454

and it is not necessary to restate their views but suffice it to say that I agree with their conclusions.

■ The recent case of American Auto Ins. Co. v. Fulcher, 4 Cir., 201 F.2d 751 clearly indicates the distinction that must be borne in mind here that the determination of whether Kirkman had permission to use the car disposes of the question of whether the car was being used by an agent of the insured. The plaintiff appears to be entitled to the relief sought in numerous cases decided by the Fourth Circuit. Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 99 F.2d 665; Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321; American Casualty Co. of Reading, Pa. v. Howard, 4 Cir., 173 F.2d 924; C. Y. Thomason Co. v. Lumbermens Mutual Casualty Co., 4 Cir., 183 F.2d 729, 733. It is appropriate to recite one sentence from the last decision. "When the insured in a liability policy has been sued for damages and calls on the insurer to undertake the defense of the suit and a question of coverage is involved which will not be decided in the suit for damages, the insurance company is entitled to be advised by a declaratory decree whether it is obligated to defend and indemnify the insured against the claim upon which the suit is brought."

Grubb used his car regularly in traveling to and from his home in Bessemer in the eastern part of Greensboro to Murray Distributing Company's place of business in the Western section of Greensboro. Sometimes he parked his car on the lot belonging to the company and sometimes on the street. He was a salesman for the company and used one of its trucks as such salesman. When he parked his car on the lot it was necessary to leave the key in it so that it could be moved out of the way when trucks were engaged in loading and unloading merchandise but there is no evidence that the key was ever left in the car except for this purpose. His car during the period of three years had not been used over 8 or 10 times by any or all of the employees and then only with the express

permission for the particular use specifically granted by Grubb. Of course the employees of the company were permitted to move it from one parking space to another on the same lot in order to keep it out of the way of trucks. Kirkman had been an employee of this company for some 6 or 7 months before the accident which occurred January 31, 1953. He was recently married, had a driver's license but did not own a car. He drove the car on two or three occasions at Grubb's request to get lunch for the employees, including Grubb. On one occasion Grubb loaned the car to Kirkman to take his wife home in order for her to get some medicine for the treatment of her asthma. Kirkman asked Grubb for permission and Grubb granted it.

On Saturday January 31 Grubb's car was on the lot with the key left in it so that it could be moved if a delivery truck came to the warehouse. Grubb and the Manager of the company went away to lunch in the manager's car and they were gone an hour or so. During this interval Kirkman's wife called and wanted him to take her home to get medicine, she being about 10 blocks away from the company's premises. Kirkman immediately tried to reach Grubb without success on the telephone to ask him for the car to take his wife home. He called two places where he thought he might get in touch with Grubb but failed to do so. He took the car and carried his wife home and on his way back to the company's premises the car collided with Pegram and inflicted personal injury. After Grubb returned from lunch Kirkman called Grubb out to tell him what had happened and Kirkman was very nervous and upset. He told Grubb he knew he had done wrong to take the car and he was sorry and Grubb said it was alright or words to that effect. Grubb explained that he felt sorry for the boy and did not want to press charges against

him when asked by the police if he wanted to do so. Kirkman and his father had the car repaired at their expense.

These facts do not warrant a finding that Kirkman at the time of the accident was using the car with the permission of the owner. On the contrary, they lead to the unmistakable conclusion that he used it without the owner's permission and that he was not an insured within the meaning of the policy. Neither the facts nor the law warrant any other finding or conclusion. The Omnibus or extended coverage clause in an automobile policy is interpreted and applied in Hooper v. Maryland Casualty Co., 233 N.C. 154, 63 S.E.2d 128, 131, and stated as follows: "The permission which puts the omnibus or extended coverage clause of the policy into operation may be either express or implied. Hodges v. Ocean Accident & Guarantee Co., 66 Ga.App. 431, 18 S.E.2d 28. But whether the permission be expressly granted or impliedly conferred, it must originate in the language or the conduct of the named insured or of some one having authority to bind him in that respect."

The court cited with approval Jordan v. Shelby Mutual Plate Glass & Casualty Co., 4 Cir., 142 F.2d 52; Standard Accident Insurance Co. v. Rivet, 5 Cir., 89 F.2d 74; Globe Indemnity Co. v. Nodlere, 10 Cir., 69 F.2d 955 and Indemnity Insurance Co. v. Jordan, 158 Va. 834, 164 S.E. 539.

The law as enunciated in the foregoing cases and approved by the Supreme Court of North Carolina and by the Fourth Circuit warrants the conclusion that the use of the car under the facts detailed in the instant case was without permission, either express or implied.

A decree will be entered in accordance with this opinion.