Garland P. STOUT, Plaintiff,

v.

GRAIN DEALERS MUTUAL INSUR-
ANCE COMPANY, Defendant.

No. C–19–G–60.

United States District Court
M. D. North Carolina,
Greensboro Division.

Jan. 16, 1962.

David H. Armstrong, Troy, N. C., for plaintiff.

Jordan, Wright, Henson & Nichols, Greensboro, N. C., for defendant.

PREYER, District Judge.

Plaintiff seeks a declaratory judgment adjudicating that the defendant is liable under a comprehensive dwelling policy is-

sued to the plaintiff by the defendant for the defense of the named insured and the payment of any recovery secured against the insured by Pota Dargenes, administratrix of the estate of James Athanasiou, deceased, arising out of the shooting and killing of James Athanasiou by Garland P. Stout, the insured and plaintiff in this action. Defendant contends that the relief asked for should be denied on the grounds of plaintiff's failure to give timely notice as required by the policy and on the grounds that the action is not within the terms of the policy.

## COVERAGE AND DUTY TO DEFEND

■■ The insurance policy in question contains the common provision obligating the insurer to defend the insured against all actions brought against him on the allegation of facts and circumstances which are covered by the policy, "even if such suit is groundless, false or fraudulent." The general rule is that under such a policy provision, the obligation of a liability insurer to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint in the action. Glen Falls Indemnity Co. v. Atlantic Building Corp., 4 Cir., 199 F.2d 60 (1952); Employers Mutual Liability Insurance Company of Wisconsin v. Hendrix, 4 Cir., 199 F.2d 53, 41 A.L.R.2d 424 (1952); Lee v. Aetna Casualty & Surety Company, 2 Cir., 178 F.2d 750 (1949). This rule applies where a complaint alleges facts which represent a risk outside the coverage of the policy but also avers facts which, if proved, represent a covered risk. Lee v. Aetna Casualty & Surety Company, supra; 50 A.L.R.2d 469, 506. The plaintiff contends that this case falls within this general rule. The plaintiff concedes that those allegations in the complaint in the civil case brought in the state court relating to intentional injury inflicted by plaintiff represent a risk outside the coverage of the policy because of the exclusionary provision of the policy which provides that:

## "THIS COVERAGE DOES NOT APPLY:

(c) to injury, sickness, disease, death or destruction caused intentionally by or at the direction of the insured."

But plaintiff avers, nevertheless, that defendant has the duty of defending the state court action because of the allegations relating to negligent injury, which plaintiff contends represents a covered risk.

While the above general rules of law are clear and well-established, we are constrained to the view, notwithstanding, that the facts and circumstances of this case represent the special situation which is controlled not by the general rule but by the case of Farm Bureau Mutual Automobile Ins. Co. v. Hammer, 4 Cir., 177 F.2d 793 (1949). In the case then before the court, the insured had been convicted of second degree murder for intentionally and maliciously driving his truck into an automobile and causing the death of an occupant of the automobile. The representatives of the occupants of the automobile had recovered $43,000.00 in judgments against the insured in state court actions which were not defended by the insurance company. These actions were brought on allegations of negligence rather than intentional injury. The insurer sought a declaratory judgment that the policy did not cover these damages because the insured had intentionally caused the collision. After pointing out that the rule might differ where the acts causing the damage were *not* those of the insured, the court stated:

"It is obvious, however, that this rule may not be applied to a policy like that in suit in which intentional injuries by the insured are expressly excluded from the coverage."

The court reasoned as follows:

"There can be no doubt that the policy in suit could not legally cover and was not intended to cover such conduct as Wagner was guilty of, or to indemnify him for the conse-

quences of his crime. Not only is it contrary to public policy to permit an insured to profit by his own wrongdoing or to encourage the commission of unlawful acts by relieving the wrongdoer of financial responsibility therefor, but the policy issued to Wagner specifically excludes from its coverage the unlawful act which he performed."

The rationale of this case is further explained in Glen Falls v. Atlantic Building Corporation, supra, as "the public policy that forbids an insured to profit by his own wrong doing."

The Court in Farm Bureau Mutual Automobile Insurance Co. v. Hammer, supra, further placed its decision on the consideration that if the company were required to defend the insured, its interest would be directly opposed to his. At 800 of 177 F.2d the Court states:

" * * * the general rule extends only to cases where the obligation to defend arises, and that this duty does not exist where the indemnitor would not be permitted to litigate matters which would determine whether an obligation on his part had arisen. 'A third party cannot be called upon to defend an action where his showing himself not to be liable will not necessarily result in a judgment in favor of a party asking him to defend.' See also, Appleman on Insurance, Law and Practice, § 4686; Pfarr v. Standard Oil Co., 165 Iowa 657, 146 N.W. 851, L.R.A.1915C, 336.

* * * * * *

"This limitation of the duty to defend is clearly applicable to the pending case. It is obvious that the Insurance Company was not qualified to undertake the defense of the insured in the suits by the injured parties against him, and that this disqualification was due to the insured's own conduct. It was not possible for the company in these suits to defend the insured, and at the same time to protect its own in-

terests. It could not exculpate itself by showing that the injurious acts of the insured were beyond the scope of the policy, for this showing would establish the liability of the insured to the injured parties to an even greater extent than that claimed in the complaints. See Pfarr v. Standard Oil Co., 165 Iowa 657, 671–672, 146 N.W. 851, L.R.A., 1915C, 336."

Both of the considerations motivating the decision in the Farm Bureau case are present in the instant case. The insurance company in the present case would be in the position of defending Stout with its right hand by showing there was no negligent or intentional injury while with its left hand it would be attempting to show that there is no coverage because it was an intentional injury. In the words of the Farm Bureau case, it would not be possible for the company in this suit to defend the insured, and at the same time to protect its own interest.

Furthermore, this disqualification was due to the plaintiff Stout's own misconduct which was of such a nature as to bring into play the public policy that forbids an insured to profit by his own wrongdoing. The plaintiff was placed on trial for murder in the North Carolina Superior Court. At the conclusion of the evidence, the plaintiff tendered and the State accepted a plea of guilty of manslaughter. The Judgment imposed a prison sentence of 5 to 7 years suspended upon the payment of a $1000 fine. Under North Carolina law, manslaughter is recognized as being divided into "manslaughter" and "involuntary manslaughter". Involuntary manslaughter "consists in the unintentional killing of one person without malice," while voluntary manslaughter is "an intentional killing of one human being by another without justification or excuse and without malice." State v. Honeycutt, 250 N.C. 229, 108 S.E.2d 485; State v. Satterfield, 198 N.C. 682, 153 S.E. 155. The plea accepted by the State and tendered by the plaintiff was not one of involuntary manslaughter but was "guilty of man-

slaughter." The plea admitted the facts in the indictment which stated the offense against him. Such admissions would place the occurrence of the death of James Athanasiou outside the ambit of the policy. As we read Farm Bureau Mutual Automobile Insurance Co. v. Hammer, supra, the plea of plaintiff standing alone is sufficient to deny coverage.

Plaintiff contends, however, that his plea of guilty in the criminal action is not binding on him in a civil action, although admissible in evidence, and that he is free to rebut it. Greenfield v. Tuccillo, 2 Cir., 129 F.2d 854 (N.Y.1942); Minasian v. Aetna Life Ins. Co., 295 Mass. 1, 3 N.E.2d 17 (1936); 18 A.L.R. 2d 1287. The plaintiff offered evidence in the present case tending to show that he entered such plea for reasons other than his guilt of the offense: that he entered the plea, reluctantly, to avoid the possibility of an active prison sentence so that he might continue to work to support his wife and children as he and his family had no other means of income. He contends that it is not for this court to make a finding as to this point, that he should be given the opportunity to present such evidence in the state court civil action, and that under all the evidence the jury in that action would be justified in returning a verdict discharging him from any liability for intentional injury.

■■ But we think this question of fact may be, and should be, determined by this court rather than being left to the state court. A purpose of the Declaratory Judgment Act is to avoid a multiplicity of suits by declaring in one action the rights and obligations of the litigants. In effectuating this policy, it is clear that in the situation of this case, where there is not identity of issues in the state suit for damages and the federal suit to determine liability of the insurance company, and where the presence of the injured party permits a complete settlement of the issue in one proceeding, the state suit is not a bar to the federal suit, or even to an independent state suit for a declaratory judgment for non-lia-

bility. Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); Borchard Declaratory Judgments 352. Nor is this court prevented from deciding the question because a question of fact is involved. Under the North Carolina law the Declaratory Judgment Act applies where the determination of questions of fact are necessary to the adjudication of the legal questions involved. Prudential Ins. Co. v. Powell, 217 N.C. 495, 8 S.E.2d 619 (1946). The North Carolina Act, like the Federal Act, also includes a provision for jury trial on fact questions if not waived. General Statutes § 1–261 and § 1–262.

This court has considered the entire transcript of the criminal trial of State v. Stout (in which the defendant's plea was entered at the close of all the testimony, the defendant testifying in his own right as well as offering 12 substantive witnesses in addition to character witnesses on his behalf), and has in addition heard the additional testimony of Stout in this court. While there are aspects of the case that are sympathetic to Stout, a man who has shown a good character, we are constrained to find that the shooting was "intentional" within the meaning of the policy. Putting the best light on it from Mr. Stout's point of view, the evidence indicates that he went outside his house at 10:30 at night for the purpose of investigating and identifying a "peeping tom" who had been molesting his family; that he had a flashlight in his left hand and a .22 rifle cradled under his right arm; that as he stood below an embankment which was several feet high, he saw the deceased, called to him; and as the deceased came toward him at a dog trot, he fired at the ground, aiming in his direction. He contends that he did not intentionally shoot the deceased but aimed at the ground in an effort to halt him, and that it was accidental, or merely negligent at most, that firing under these circumstances two bullets struck the deceased.

An accident, under North Carolina law, is defined as an event from an un-

known cause, or an unusual and unexpected event from a known cause. Crutchfield v. Richmond & D. R. R., 176 N.C. 320. This occurrence, though tragic, clearly does not fall within the category of an unavoidable accident. Furthermore, even taking the evidence in the light most favorable to the defendant, we do not think that one who fires 15 shots in this manner in the direction of another can be heard to say that the resulting injury was unintentional and only the result of negligence at most. The evidence also indicates that the plaintiff had been troubled by prowlers at an earlier date; that he had tested the gun, loaded it, and placed it in a closet against the contingency of a prowler; that he had set up an arrangement of trip strings to give him warning of the presence of a prowler; and that when his daughter notified him of the presence of someone outside the house on this occasion, he took his gun, after shutting his dog in the house, and without calling the police went outside for the purpose of apprehending the deceased. Two of the fifteen shots struck the deceased, both in the back, one entering in the buttock and the other entering at the center of the back and penetrating the heart. The evidence indicates that the shots were fired in rapid succession. However, the fact that Mr. Stout may have fired in self-defense or in a sudden panic would not prevent the firing from being "intentional". Under North Carolina law self-defense is a plea by way of justification or excuse for an intentional killing and admits the intentional nature of the action.

We find, therefore, that the injury was intentionally inflicted and that the insurance company has no duty to defend the suit against it in the state court since the facts alleging intentional injury in that suit do not bring the case within the coverage of the policy.

But plaintiff contends that the suit in the state court also alleges a cause of action for negligence in addition to a cause of action for intentionally inflicted injuries and that the insurance company has the duty to defend as to the charge of negligent injury at least. We think the short answer under the facts and circumstances of this case is again found in the expression of policy in Farm Bureau Mutual Automobile Ins. Co. v. Hammer, supra. But accepting plaintiff's contention, arguendo, that the allegations of the complaint govern the obligation to defend, we hold that the Complaint in this case does not reveal allegations which would require a defense by the defendant. The allegations in the Complaint relating to liability are as follows:

"4.

"That on June 2, 1958, the defendant shot and killed James Athanasiou.

"5.

"That the defendant shot the deceased in the back two times with a 22 caliber rifle.

"6.

"That one bullet entered the body of the deceased just below the right scapula at the 7th intercestal space and traversed from right to left and punctured the right lung, the right lobe of the liver, and the heart; the other bullet entered the right buttock of the deceased just over the crest of the right illium.

"7.

"That the shooting and killing of James Athanasiou by the defendant was unlawful, wilful, wanton, malicious and felonious.

"8.

"That on October 21, 1958, the defendant was placed on trial in Guilford County Superior Court, Greensboro Division, on an indictment for second degree murder of James Athanasiou.

"9.

"That during the said trial, and on October 24, the defendant pleaded guilty to the crime of manslaughter.

"11.

"That the wrongful and negligent conduct of the defendant was the proximate cause of the death of the deceased.

"12.

"That by reason of the wrongful acts and negligence of the defendant, the plaintiff has been damaged in the amount of $100,000."

Subsequently, paragraphs 8 and 9 were stricken by order of the Court.

These allegations, as they stand after the granting of the motion to strike subparagraphs 8 and 9, consist largely of legal conclusions, and it may require considerable "plasticity of modern pleading," (alluded to in Lee v. Aetna Casualty and Surety Co., supra), for it to state *any* cause of action under North Carolina pleading, (under which the cause of action depends on the allegations in the complaint as to facts and not on conclusions drawn from such facts). However that may be, it seems clear that the tenor of the allegations is clearly one of intentionally inflicted injuries resulting in death. Moreover, the complaint seeks execution against the person of the plaintiff which "applies only where the injury was intentional." Oakley v. Lasater, 172 N.C. 96, 89 S.E. 1063, 1064. The only mention of negligence in the complaint is in the form of legal conclusions in paragraphs 10 and 11. In Boutwell v. Employers' Liability Assurance Corporation, 5 Cir., 175 F.2d 597 (Miss.1949), the court stated: "We think that the duty of the insurance company to defend must be determined by the allegations in the declarations in the suits against the assured, or any amendments thereto of which the insurer was cognizant or, under the circumstances, should have been cognizant, regardless of whether or not the suits were groundless or fraudulent." Assuming that this is the law in this case

and that Farm Bureau Mutual Automobile Ins. Co. v. Hammer does not control, we hold that the complaint contains no allegations which would require the insurance company to defend.

## OBLIGATION TO PAY

Plaintiff also seeks to have it adjudicated that defendant still has the obligation to pay any judgment rendered against the insured within the coverage of the policy, even if there is no obligation to defend. Plaintiff argues, on a suggestion in Lee v. Aetna Casualty & Surety Co., supra, that the initial pleading might later be amended to disclose for the first time a case within the policy that thereupon a recovery might then be had in the state court, and that the insurer would then become bound.

But plaintiff has brought this suit for the purpose of determining coverage, and that issue, having been resolved in the defendant's favor, resolves the whole matter. The issue of coverage as determined in this cause is not dependent upon any subsequent decision in the state action. A declaratory judgment cause does not have to await the decision in the basic cause for damages. Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). Borchard Declaratory Judgments 352. This has been the practice of this district. Nationwide Mutual Insurance Co. v. Chandler, 151 F.Supp. 365, (M.D.N.C.1957); Northwest Casualty Co. v. Kirkman, 119 F.Supp. 828 (M.D.N.C.1954). To hold otherwise would render the declaratory judgment act meaningless and without purpose.

## NOTICE

Defendant further contends that the plaintiff has failed to comply with the conditions of the policy by failing to give written notice "as soon as practicable", as required by the policy.[1] While it is

---

1. "(f) Notice of Occurrence: When an occurrence takes place written notice shall be given by or on behalf of the insured to this company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place, and circumstances of the occurrence, the names and addresses of the injured and available witnesses."

not necessary to reach this contention in view of our decision on the broader coverage issue, we discuss it in the interest of avoiding unnecessary appeals where possible.

The evidence indicates that the occurrence took place on June 2, 1958; the action for wrongful death was instituted on May 13, 1959, in the North Carolina Superior Court; notice was given to defendant shortly thereafter in May, 1959. Defendant replied to the notice by two letters on May 28, 1959, and Sept. 14, 1959. Both letters denied liability on the sole ground of lack of coverage. The defendant's answer filed in the instant suit contains only a general denial of liability. Further, plaintiff served certain interrogatories on the defendant for the purpose of determining whether all conditions precedent of the policy had been complied with. These interrogatories were answered rather generally by the defendant without any mention of the failure to give notice. The plaintiff contends, therefore, that the defendant, by a denial of liability on grounds other than the failure to give notice of the occurrence, has waived its rights to rely on such omission.

The general rule is that an insurer, by denying liability under the policy of insurance on grounds not relating to the filing of the notices or proofs of loss, waives the provisions of the policy requiring notice or proof of loss to be filed within a specific time after the loss where there is a denial of liability before the time for filing notice or proof of loss expires. Parker & Co. v. Continental Insurance Co., 143 N.C. 339, 342; 55 S.E. 717 (1906); Gorham v. Pacific Mut. Life Insurance Co., 214 N.C. 526, 200 S.E. 5 (1938); Taylor v. Home Insurance Co., 202 N.C. 659, 163 S.E. 749 (1932); 29 Am.Jur., Insurance, § 1431, page 542. The Courts are divided as to the rule when such denial of liability is *after* the time for filing notice or proof of loss has expired.

It is not entirely clear what rule the North Carolina Courts will follow in the latter situation. The rationale of the later North Carolina cases, however, and dicta expressed in some of those cases indicates that the North Carolina position is that denial of liability on other grounds when such denial occurs *after* the time for filing notice or proof of loss has expired does not constitute a waiver. In Zibelin v. Pawtucket Mutual Fire Insurance Company, 229 N.C. 567, 569; 50 S.E.2d 290 (1948), the Court said (emphasis added):

"There was here no denial of liability on other grounds by the Insurance Company *within the time limited for filing proof of loss* which would have dispensed with that requirement."

The Court held that the plaintiff, "having failed to observe the terms of the policy and to comply with its plainly written provisions," was barred from asserting any right thereunder and that since the company had not denied the claim on other grounds before the time for filing proofs expires there could be no waiver of its right to rely on the conditions of the policy. In Gardner v. Carolina Insurance Company, 230 N.C. 750, 751, 55 S.E.2d 694 (1949) the Court reasserted the principle that "a denial of liability by the insurer, *made during the period prescribed by the policy for the presentation of proof of loss*, on grounds not relating to the proof, will be considered a waiver of the provision requiring such proof." (Emphasis supplied.)

Furthermore, the North Carolina Supreme Court has repeatedly emphasized the importance of observing the terms of the insurance contract; has established notice as a condition precedent; and has placed the burden of allegation and proof of compliance with notice requirements upon the insured. Muncie v. Travelers Insurance Company, 253 N.C. 74, 116 S.E.2d 474 (1960) (where notice given 7 months after the occurrence was held not to meet the requirement for written notice "as soon as practicable").

This view of the law appears to be supported not only by the North Carolina cases but also by the reason of the thing.

Before the time for notice has expired a denial of liability on other grounds would make filing a notice a useless thing and the reason for giving notice would not exist. This consideration would not apply where notice is given beyond the period of time set forth in the policy and the company denies liability on broad coverage grounds but where there is no intentional relinquishment and no waiver.

Judgment will be entered accordingly.