ERIE INSURANCE GROUP, Plaintiff-Appellee v. DONALD R. BUCKNER and
GORDON WESTON, SR., Defendants-Appellants

No. COA96-996

(Filed 16 September 1997)

**Insurance § 725 (NCI4th)— homeowner's insurance—assault at golf course—intended or expected exclusion**

> Under Virginia law, the "expected or intended" injury exclusion in a homeowner's policy precluded liability coverage under the policy for an assault claim against the insured growing out of an altercation at a golf course where the insured admitted that he struck the claimant in the head with his fist, notwithstanding the insured alleged that he acted in self-defense.

Judge TIMMONS-GOODSON concurring.

Appeal by defendant Donald R. Buckner from order entered 13 May 1996 by Judge Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the Court of Appeals 24 April 1997.

*Cranfill, Sumner & Hartzog, L.L.P., by Robert H. Griffin, for plaintiff-appellee.*

*Evans West & Woods, P.A., by Phillip K. Woods, for defendant-appellant Donald R. Buckner.*

WYNN, Judge.

Erie Insurance Group ("Erie") brought this declaratory judgment action seeking a declaration of its rights and duties under a homeowner's insurance policy issued to Donald R. Buckner. This controversy arises out of an incident involving Buckner at a golf course in Dare County, North Carolina.

On 21 January 1995, Buckner participated in a golf tournament at the Sea Scape Golf Course. Immediately behind Buckner's foursome on the golf course was a group of three, including Gordon Weston, Sr. At the eleventh hole, Buckner picked up Weston's golf ball which had rolled near him and put it in his pocket. A fight ensued between Buckner and Weston and both parties' version of the incident differs.

Buckner contends that Weston's group had been heckling, crowding and rushing his group since the fourth hole; that he picked up

Weston's ball to stop him from hitting it into his group; that Weston then became irate and verbally abusive and walked straight into him; and that he pushed Weston away causing him to stumble and fall. Buckner states that he struck Weston in the forehead with his fist in self-defense when Weston got up and charged back at him.

On the other hand, Weston contends that Buckner had been drinking that day, had picked up his golf ball on previous occasions, and had instigated the fight. Weston sued Buckner alleging that he unlawfully, willfully, and maliciously committed an assault with the deliberate intent to injure him.

Faced with that lawsuit, Buckner demanded under his homeowner's insurance policy that Erie defend him in the litigation and provide him with coverage for any damages owed to Weston. In response, Erie brought this declaratory judgment action contending that it had no duty under the policy to either defend Buckner or cover his damages arising out of the golfing incident.

Following motions by both parties for summary judgment, the trial court ruled in favor of Erie. Buckner appealed.

On appeal, Buckner argues that the trial court erred by ruling as a matter of law that Erie has no obligation to provide insurance coverage for the 21 January 1995 incident and no duty to defend Buckner in the pending litigation with Weston. We disagree.

The personal liability coverage section of Buckner's homeowner's insurance policy with Erie provides in relevant part that:

> We will pay all sums up to the amount shown on the Declarations, which anyone we protect becomes legally obligated to pay as damages because of personal injury or property damage resulting from an occurrence during this policy period. . . . If anyone we protect is sued for damages because of personal injury or property damage covered by this policy, we will provide a defense with a lawyer we choose, even if the allegations are not true.

This section specifically excludes from coverage "[p]ersonal injury or property damage expected or intended by anyone we protect."

The parties agree and we confirm that Virginia law governs our interpretation of the subject policy because Erie issued the policy in that State. *See Roomy v. Allstate Ins. Co.*, 256 N.C. 318, 123 S.E.2d

817 (1962).[1] Under Virginia law, "[e]xclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies." *Smith v. Allstate Ins. Co.*, 403 S.E.2d 696, 697 (Va. 1991) (quoting *American Reliance Insurance Co. v. Mitchell*, 385 S.E.2d 583, 585 (Va. 1989)). The intentional acts exclusion of the policy in the subject case is common to many personal liability policies and unambiguously excludes coverage for injuries that the insured expects or intends to cause. *See Fuisz v. Selective Ins. Co. of America*, 61 F.3d 238 (4th Cir. 1995); *Commercial Union Ins. Co. v. Mauldin*, 62 N.C. App. 461, 303 S.E.2d 214 (1983). As to the insurer's duty to defend, "[w]hen an initial pleading 'alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy,' the insurance company is obliged to defend its insured." *Fuisz*, 61 F.3d at 242 (quoting *Parker v. Hartford Fire Ins. Co.*, 278 S.E.2d 803, 804 (Va. 1981)). Thus, it follows that "an insurer is excused from its duty to defend the insured only where the complaint against the insured clearly demonstrates no basis upon which the insurer could be required to indemnify the insured under the policy." *Id.*

The complaint in the subject case alleges that "the defendant unlawfully, wilfully, and maliciously committed an assault upon the plaintiff" and that it was made "with a deliberate intent on the part of the defendant to injure the plaintiff." Buckner argues that even though the complaint alleges an intentional tort, it does not necessarily fall clearly within the insurance policy's "intended or expected" exclusion. He points out that in *Russ v. Great American Ins. Companies*, 121 N.C. App. 185, 464 S.E.2d 723 (1996), *disc. review denied*, 342 N.C. 896, 467 S.E.2d 905 (1996), we said: "Actions for battery protect against 'intentional and unpermitted contact with one's person.' The intent required to prove battery is intent to act, i.e., the intent to cause harmful or offensive contact, not the intent to injure." *Id.* at 188, 464 S.E.2d at 725 (citation omitted). Thus, he argues, the complaint does not clearly demonstrate that the exclusion would preclude coverage and therefore, Erie would not be relieved of its duty to defend.

However, the record indicates that there is no dispute between the parties that Buckner struck Weston in the forehead with his fist.

---

1. However, we also find North Carolina cases instructive since North Carolina law is substantially similar to Virginia law concerning the legal standards determining coverage, exclusions and duties of defense.

Even assuming *arguendo* that Buckner did not *intend* to injure Weston, he should have *expected* that an injury was likely to occur. Therefore, we hold that the exclusion for *expected or intended* injuries precludes coverage under the policy.

Buckner further argues that because he alleged that he acted in self-defense, his actions do not fall within the "expected or intended" exclusion. While it appears that neither the Virginia nor North Carolina state courts have directly considered this issue, for guidance we note that the United States District Court for the Middle District of North Carolina in addressing this issue has stated that:

> [S]elf-defense is a plea by way of justification or excuse for an intentional killing and admits the intentional nature of the action. We find, therefore, that the injury was intentionally inflicted and that the insurance company has no duty to defend the suit against it in the state court since the facts alleging intentional injury in that suit do not bring the case within the coverage of the policy.

*Stout v. Grain Dealers Mut. Ins. Co.*, 201 F. Supp. 647, 651 (M.D.N.C.), *aff'd*, 307 F.2d 521 (4th Cir. 1962). Moreover, the Virginia Supreme Court has noted that: "In the law, there are many situations in which a person may intentionally injure or kill another and not be subject to criminal punishment. For example, an individual may kill in self-defense . . . . This conduct is intentional but it is also excusable." *Johnson v. Insurance Co. of North America*, 350 S.E.2d 616, 621 (Va. 1986). Thus, we conclude that an allegation of self-defense does not negate the element of intent for a particular act; rather it justifies or excuses the act. Accordingly, we hold that Buckner's defense of self-defense has no effect on the applicability of the "intended or expected" exclusion of his insurance policy.

In sum, we hold that Buckner should have expected that punching Weston in the face would cause injury and therefore, the "intended or expected" exclusion precludes coverage of the incident under the Erie insurance policy. Since an insurer is relieved of the duty to defend "when it clearly appears from the initial pleading the insurer would not be liable under the policy contract for *any* judgment based upon the allegations," *Reisen v. Aetna Life and Cas. Co.*, 302 S.E.2d 529, 531 (Va. 1983), the trial court properly held that the 21 January 1995 incident was not covered under the terms of the homeowner's policy and Erie had no duty to defend Buckner in the pending litigation. Accordingly we affirm the trial court's order of summary judgment in Erie's favor.

Affirmed.

Judge GREENE concurs.

Judge TIMMONS-GOODSON concurs in the result with separate opinion.

Judge TIMMONS-GOODSON concurring.

I agree with the majority that the trial court did not err in granting Erie's motion for summary judgment, because the law of the state of Virginia must be applied to these facts. However, the issue of the apparent inability of one to defend oneself against a perceived threat concerns me. I believe that injury resulting from an act taken in self-defense is not *intended* nor *expected* as these terms are commonly understood. The exigency of the circumstances necessitating one to defend oneself deprives one of any opportunity to calculate whether the actions taken in defense would result in injury to the attacker. Further, one should not be required to engage in such an exercise when confronted with an imminent attack.