## VERMONT MUTUAL INSURANCE COMPANY *v.* JOSEPH S. WALUKIEWICZ ET AL.
### (SC 18061)

Rogers, C. J., and Norcott, Palmer, Zarella and Schaller, Js.

Argued October 15, 2008—officially released March 17, 2009

*Proloy K. Das*, with whom, on the brief, was *Shannon C. Kief*, for the appellant (defendant Kevin Brown).

*Thomas C. Clark*, with whom were *Melicent B. Thompson*, and, on the brief, *Aileen R. Wilson*, for the appellee (plaintiff).

*Opinion*

ROGERS, C. J. The primary question raised by this appeal is whether provisions in the liability insurance portion of a homeowner's insurance policy (policy) that afford indemnification for damages resulting from accidents, but not for intentionally caused injuries, preclude coverage for an insured who, when acting in self-defense, causes bodily injury to another. The plaintiff, Vermont Mutual Insurance Company, brought this declaratory judgment action[1] to obtain a determination of whether it was obligated to defend or indemnify its insured, the named defendant, Joseph S. Walukiewicz, in connection with a personal injury action brought by the defendant Kevin Brown, following an altercation between the two men.[2] Brown appeals[3] from the judgment of the trial court, following a jury trial, determining that the policy did not afford coverage. He argues that, because the court misinterpreted the relevant terms of the policy to deny coverage regardless of whether an insured is acting in self-defense, it improperly excluded evidence of Walukiewicz' subjective intent at the time of the altercation and of the extent of Brown's injuries

---

[1] The plaintiff brought the action pursuant to General Statutes § 52-29 and Practice Book § 17-54.

[2] Both Walukiewicz and Brown were named as defendants in the complaint, but only Brown has appealed from the trial court's judgment. For clarity, we refer to each defendant by name.

[3] Brown appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

and, further, improperly instructed the jury as to the standards to apply. We agree that there is coverage when an insured acts in self-defense and, accordingly, we reverse the judgment of the trial court.

The following facts, which essentially are undisputed, and procedural history are relevant to the appeal. On April 15, 2002, an altercation between Walukiewicz and Brown occurred outside the home of Brown's estranged wife.[4] Brown had arrived there seeking to speak with his wife, and Walukiewicz, after informing Brown that she was sleeping, encouraged Brown to leave. The two men continued to discuss the matter while standing in close proximity to each other on the front porch of the house. At some point, Walukiewicz grabbed Brown, turned to one side and tossed Brown away from him. As a result of these actions, Brown fell down the porch steps and sustained significant injuries to his leg. Thereafter, Brown brought a negligence action against Walukiewicz (negligence action) to recover damages associated with those injuries. See *Brown* v. *Robishaw*, 282 Conn. 628, 630–31, 922 A.2d 1086 (2008). The plaintiff then brought the present action seeking declaratory relief, namely, a determination that it was not obligated to defend Walukiewicz or to indemnify him in the event of a judgment against him in the negligence action.[5]

---

[4] The plaintiff does not dispute that, as a general matter, the policy at issue afforded Walukiewicz personal liability coverage for qualifying events occurring at places other than his own residence.

[5] Because the present matter remained unresolved at the time of trial in the negligence action, the plaintiff defended Walukiewicz in that action pursuant to a nonwaiver agreement as to indemnification. Although Brown prevailed in the negligence action and obtained a judgment of damages in the amount of $312,389.15, that judgment was reversed on appeal to this court. See *Brown* v. *Robishaw*, supra, 282 Conn. 632, 644. In that appeal, we agreed with Walukiewicz that the trial court improperly had refused to instruct the jury on his special defense of self-defense because a self-defense theory is legally cognizable in a negligence action and had support in the evidence presented. Id., 637–43. Although we remanded the negligence action for a new trial, the action has been stayed pending resolution of the present matter.

The relevant provisions of the policy affording liability coverage to Walukiewicz are as follows. Pursuant to § II.E of the policy, an insured is entitled to indemnification, up to the policy limit, when "a claim is made or a suit is brought against [the] 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' . . . ." An " '[o]ccurrence' " is defined in the policy as "an accident . . . which results, during the policy period, in: a. 'Bodily injury'; or b. 'property damage.' " The policy also contains a number of exclusions applicable to § II.E. Pertinently, the exclusion section of the policy provides that coverage under § II.E "do[es] not apply to 'bodily injury' or 'property damage': a. Which is expected or intended by the 'insured' . . . ." Such a provision is common in liability insurance policies and typically is referred to as an intentional acts exclusion or intentional injury exclusion.[6] See *Kennedy* v. *State Farm Fire & Casualty Co.*, 738 F. Sup. 511, 513 (S.D. Ga. 1990) (characterizing exclusion as "boilerplate language in modern liability insurance policies"), aff'd, 914 F.2d 269 (11th Cir. 1990); see also 18 E. Holmes, Appleman on Insurance (2d 2001) § 123.2, p. 62. Pursuant to the policy, the plaintiff is obligated both to indemnify Walukiewicz, up to the policy limits, for damages for which he is found legally liable and, further, to provide a defense to Walukiewicz in an action brought against him to recover such damages.

Prior to a jury trial to determine whether the policy provisions provided coverage for Brown's negligence claim, the plaintiff filed two motions in limine. The first motion sought to preclude evidence as to the nature and extent of Brown's injuries.[7] The second motion

---

[6] In this opinion, we refer to the provision as an intentional injury exclusion. In light of the reasoning expressed herein, we believe that term to be a more accurate description.

[7] The parties had stipulated to the fact that Brown had suffered bodily injury.

sought to preclude any evidence that Walukiewicz was acting in self-defense. The trial court granted both of the motions. As to the first motion, the trial court reasoned that the proper inquiry for determining whether the intentional injury exclusion applied was an objective one, i.e., if one intends to act, it may be inferred that he also intends the natural and probable consequences of that act. Accordingly, evidence that might indicate whether Walukiewicz subjectively had intended to inflict the injuries suffered by Brown was not relevant.[8] As to the second motion, the court reasoned that the policy did not explicitly provide for a self-defense exception to the intentional injury exclusion, that a person acting in self-defense necessarily is acting intentionally, and that self-defense, while it perhaps provides a justification or motive for an act that causes injury, does not render that act unintentional.

When charging the jurors on the applicable law, the trial court gave instructions consistent with its earlier rulings on the motions in limine. The court first instructed the jury to consider whether there had been an "occurrence, which really in short order means was there an accident?" The court explained that the concepts of "intentional" and "accidental" were mutually exclusive such that, if the events of April 15, 2002, were intentional, they were not accidental. The court defined "accident" as, inter alia, "an unintended occurrence," and directed the jurors, when considering whether the events in question were unintended, not to consider Walukiewicz' subjective intent, but rather, to apply an objective standard, specifically, whether "an ordinary, reasonable person [would] be able to foresee that [Walukiewicz' actions were] substantially likely to

---

[8] Relying on case law, the court reasoned additionally that, "[i]f the intent to harm is present, it is immaterial that the actual injury caused is different in character or magnitude from that originally contemplated." The foregoing aspect of the objective test cited by the court is not implicated in this appeal.

cause someone an injury . . . . That is, if you grab somebody, you turn them, and you throw him, is it likely that they're going to get hurt? If the answer to that question is yes, it's not an accident and, therefore, there's no coverage."[9] In regard to the intentional injury exclusion, the court instructed the jurors that "it's also an objective standard. It doesn't matter what . . . Walukiewicz intended, it only matters whether or not . . . a reasonable person would expect that somebody might suffer an injury, substantial likelihood of an injury in this event. . . . [T]he inquiry is similar on both [policy provisions] . . . ." The court subsequently reiterated that Walukiewicz' subjective intent and whether he was acting in self-defense were not relevant considerations, and that the jurors should ignore any evidence in that regard. The trial court denied Brown's request to instruct the jury that an exception to the intentional injury exclusion in the policy would apply if the jury found that Walukiewicz, when he grabbed and tossed Brown, had been acting in self-defense.[10]

The jury was presented with interrogatories reflecting the court's instructions.[11] On the basis of the

[9] The court thus instructed the jurors, when determining whether there had been an occurrence, to decide whether Brown's injuries, not Walukiewicz' conduct, had been intentional and, therefore, not accidental. The court apparently assumed that Walukiewicz' conduct necessarily was intentional.

[10] The requested instruction was as follows: "An injury resulting from an act committed by an insured in self-defense is not, as a matter of law, an expected or intended act within the meaning of a policy of insurance excluding intended or intentional acts. Therefore, if you find that . . . Walukiewicz was acting in self-defense during the event in question, you must find, as a matter of law, that the event in question was not an intended or intentional act."

[11] The interrogatories asked (1) whether Walukiewicz had grabbed and thrown Brown and, if so, (2) whether such was an act that an ordinary, reasonable person would foresee as likely to cause bodily injury or harm. The second interrogatory apparently was designed to elicit findings both on whether there was an occurrence within the meaning of the policy and whether Brown's injuries should be deemed to have been expected or intended by Walukiewicz.

jurors' responses to those interrogatories, the trial court rendered judgment in favor of the plaintiff.[12] This appeal followed.

The claims raised on appeal essentially are subsidiary components of the same legal question, namely, whether the subjective intent of the insured has any relevance in determining whether there is insurance coverage for injuries caused by his actions. Specifically, Brown claims that the trial court improperly concluded that Walukiewicz' subjective intent during the altercation was irrelevant to the determination of whether the policy afforded coverage. According to Brown, Walukiewicz' subjective intent was relevant for purposes of determining both whether the incident at issue was an accident, and, therefore, an occurrence for which coverage was afforded, and whether Walukiewicz expected or intended bodily injury to Brown, such that the intentional injury exclusion would apply to preclude coverage. He claims specifically that acts taken in self-defense fall within the definition of occurrence, and that injuries caused by those acts do not fall within the

---

[12] Brown thereafter filed a motion to set aside the verdict in which he argued that the court improperly: granted the plaintiff's two motions in limine; excluded evidence of Walukiewicz' "mental state, thoughts or motivation, including fears, apprehension, feeling threatened, or subjective state of mind"; "instruct[ed] the jury to consider as irrelevant, the state of mind, testimony, thoughts and/or mental impressions of . . . Walukiewicz, where such evidence is relevant on the issue of whether the underlying event complained about is an 'occurrence' within the . . . policy and whether there exists an exclusion under the terms of the . . . policy which bars coverage for bodily injury as a result of an act 'intended or expected by an insured' "; and "refus[ed] to charge the jury on the issue of self-defense in relation to the mental state, intent, thought process, or reasoning of . . . Walukiewicz as to whether:

"a. the underlying event is an 'occurrence' under the terms of the insurance contract; [and]

"b. the finder of fact should consider this evidence in reviewing the plaintiff's claim of exclusion under the insurance policy which excludes bodily injury for actions which are 'intended or expected by the insured.' " The trial court denied the motion to set aside the verdict.

intentional injury exclusion. Brown argues that the trial court's misconstruction of the policy caused the court improperly to exclude relevant evidence and to instruct the jury to use an objective rather than a subjective standard when determining Walukiewicz' intent.

The plaintiff argues in response that the express language of the policy is unambiguous, that it contains no exception to the intentional injury exclusion for injuries inflicted in self-defense and that for this court to read such an exception into the policy would be to alter improperly the terms of an insurance contract. It further urges this court to follow the reasoning of those courts that have concluded that actions taken in self-defense are not accidental and that injuries caused by those actions fall within the ambit of exclusionary provisions such as the one at issue here. According to the plaintiff, the trial court properly instructed the jury that an objective standard was to be applied in assessing whether Walukiewicz expected or intended to injure Brown. We agree with the position advocated by Brown.

Before turning to the issues on appeal, we observe that this case, at least initially, raised questions as to both the plaintiff's duty to indemnify and its duty to defend Walukiewicz. Because the jury trial in the negligence action had concluded prior to commencement of trial in the declaratory judgment action; see footnote 5 of this opinion; however, the issue of whether the plaintiff had a duty to defend Walukiewicz in the negligence action became moot. Accordingly, the trial court's decision was directed only at the question of whether the plaintiff had a duty to indemnify Walukiewicz, and the court's resolution of that question is all that we review today. We emphasize, nevertheless, that the principles hereinafter articulated typically will implicate, primarily, an insurer's duty to defend. As explained by a prominent commentator on the law of insurance: "The liability insurer's financial obligation

to pay the proceeds of the liability insurance policy has no practical significance in the cases litigating the controversy over whether intentional conduct, committed in self-defense and causing intentional injury, is covered. If the insured acts within the zone of legitimate self-defense, the insured will not be liable to the victim, and no proceeds will be owed the victim . . . . If the insured did not act in self-defense, there was no privilege to act intentionally so as to injure the plaintiff, and no coverage would be provided and hence no proceeds paid." 18 E. Holmes, supra, § 123.1 [B], p. 59. An important caveat bears emphasizing, however. *"The insurer has a duty to defend any claim within coverage; if intentional acts of self-defense are within coverage, the insurer has a duty to defend the insured whenever the insured claims he or she acted in self-defense and the plaintiff was injured thereby."*[13] (Emphasis added.) Id. Having made clear the import of our decision today, we turn to the claims raised.

The applicable standards governing our review are well settled. "[C]onstruction of a contract of insurance presents a question of law for the [trial] court which this court reviews de novo. . . . [T]he terms of an insurance policy are to be construed according to the general rules of contract construction. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy." (Citation omitted; internal

---

[13] We note additionally a second caveat that we previously recognized in the appeal from the judgment in the negligence action. See *Brown* v. *Robishaw*, supra, 282 Conn. 638–39. Specifically, "it is possible that a person acting in self-defense, though having a privilege to so act, might have used more force than was necessary. A party can be held liable in damages for using excessive force; therefore, whether intentional acts committed in self-defense are covered by the liability policy will determine whether an insured will be covered for having used excessive force." 18 E. Holmes, supra, § 123.1 [B], p. 59.

quotation marks omitted.) *Galgano* v. *Metropolitan Property & Casualty Ins. Co.*, 267 Conn. 512, 519, 838 A.2d 993 (2004). In evaluating the expectations of the parties, we are mindful of the "principle that provisions in insurance contracts must be construed as laymen would understand [them] and not according to the interpretation of sophisticated underwriters and that the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." (Internal quotation marks omitted.) *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 16, 942 A.2d 334 (2008).

"If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses." (Internal quotation marks omitted.) *Galgano* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 267 Conn. 519.

We begin by noting that the central question presented by this appeal—whether an incident of self-defense constitutes an "accident" and whether bodily injuries inflicted therein are "expected or intended" within the meaning of an intentional injury exclusion in a liability insurance policy—is an issue of first impression in Connecticut, and that the decisions of our sister courts addressing the matter reveal a split of opinion. See generally annot., 34 A.L.R.4th 761 (1984); 18 E. Holmes, supra, § 123.1, p. 58. While there is strong support for affording coverage pursuant to policy provisions identical or similar to those at issue here; see, e.g., *Safeco Ins. Co. of America* v. *Tunkle*, 997 F. Sup.

1356, 1357 (D. Mont. 1998); *State Farm Fire & Casualty Co.* v. *Poomaihealani*, 667 F. Sup. 705, 709 (D. Haw. 1987); *Transamerica Ins. Group* v. *Meere*, 143 Ariz. 351, 358–59, 694 P.2d 181 (1984); *Jafari* v. *EMC Ins. Cos.*, 155 Cal. App. 4th 885, 896, 66 Cal. Rptr. 3d 359, cert. granted, 172 P.3d 401, 69 Cal. Rptr. 3d 95 (2007); *Deakyne* v. *Selective Ins. Co. of America*, 728 A.2d 569, 572, 574 (Del. Super. 1997), reargument denied, 1998 Del. Super. LEXIS 292 (April 29, 1998); *Western Fire Ins. Co.* v. *Persons*, 393 N.W.2d 234, 237 (Minn. App. 1986); *Allstate Ins. Co.* v. *Novak*, 210 Neb. 184, 193, 313 N.W.2d 636 (1981); *Preferred Mutual Ins. Co.* v. *Thompson*, 23 Ohio St. 3d 78, 81, 491 N.E.2d 688 (1986); *Vermont Mutual Ins. Co.* v. *Singleton*, 316 S.C. 5, 9–10, 446 S.E.2d 417 (1994); *Stoebner* v. *South Dakota Farm Bureau Mutual Ins. Co.*, 598 N.W.2d 557, 559–60 (S.D. 1999); *Farmers & Mechanics Mutual Ins. Co. of West Virginia* v. *Cook*, 210 W. Va. 394, 403, 557 S.E.2d 801 (2001); *Berg* v. *Fall*, 138 Wis. 2d 115, 117, 405 N.W.2d 701 (App. 1987), overruled on other grounds by *Sustache* v. *American Family Mutual Ins. Co.*, 303 Wis. 2d 714, 735 N.W.2d 186 (2007); a significant number of decisions support the opposite conclusion. See, e.g., *State Farm Fire & Casualty Co.* v. *Marshall*, 554 So. 2d 504, 505 (Fla. 1989); *Georgia Farm Bureau Mutual Ins. Co.* v. *Machett*, 207 Ga. App. 588, 589, 428 S.E.2d 636 (1993); *Maxson* v. *Farmers Ins. of Idaho, Inc.*, 107 Idaho 1043, 1044–45, 695 P.2d 428 (App. 1985); *Home Ins. Co.* v. *Neilsen*, 165 Ind. App. 445, 451, 332 N.E.2d 240 (1975); *AMCO Ins. Co.* v. *Estate of Wehde*, Docket No. 5-961/ 05-0503, 2006 Iowa App. LEXIS 237, *13 (March 15, 2006); *Royal Ins. Co.* v. *Pinette*, 756 A.2d 520, 524–25 (Me. 2000); *Auto-Owners Ins. Co.* v. *Harrington*, 212 Mich. App. 682, 685, 538 N.W.2d 106 (1995), aff'd, 455 Mich. 377, 565 N.W.2d 839 (1997); *Erie Ins. Group* v. *Buckner*, 127 N.C. App. 405, 407–408, 489 S.E.2d 901 (1997) (applying Virginia law); *Cooperative Fire Ins.*

*Assn. of Vermont* v. *Bizon,* 166 Vt. 326, 333–35, 693 A.2d 722 (1997); *Grange Ins. Co.* v. *Brosseau,* 113 Wash. 2d 91, 97, 776 P.2d 123 (1989). After reviewing the foregoing jurisprudence, we are convinced that the former line of cases is more persuasively reasoned. Accordingly, we join those courts that have concluded that liability insurance coverage is not precluded for injuries caused by privileged acts taken in self-defense.[14]

Turning to the policy language, our initial consideration is whether Brown's injuries were caused by an "occurrence," which the policy defines as an "accident." Because the term "accident" is not further defined, we find guidance in decisions of other courts that have afforded the word its ordinary meaning, as reflected in dictionary definitions. A typical definition of the term "accident" is "a lack of intention or necessity, often opposed to design; an unforeseen unplanned event; [a] sudden event or change occurring without intent or volition . . . and producing an unfortunate result." (Internal quotation marks omitted.) *Safeco Ins. Co. of America* v. *Tunkle,* supra, 997 F. Sup. 1357; see also *AMCO Ins. Co.* v. *Estate of Wehde,* supra, 2006 Iowa App. LEXIS *9 ("[a]n accident is an event that is unintended from the perspective of the insured"). Similarly, in construing the phrase "accidental injury" as used in the Workers' Compensation Act, General Statutes § 31-275 et seq., this court has defined "accident" as "an unlooked-for mishap or an untoward event or condition not expected." *Linnane* v. *Aetna Brewing Co.,* 91 Conn. 158, 162, 99 A. 507 (1916). In short, the relevant inquiry in determining whether an accident has occurred is whether the injuries at issue were caused by the intentional design of the insured, or rather, by a sudden, unforeseen event.

[14] Self-defense, in the law of torts, is a privilege "conditioned upon a proper motive and reasonable behavior . . . ." W. Prosser, Torts (4th Ed. 1971) § 16, p. 99.

If the focus is narrow, that is, on the discrete physical acts undertaken in self-defense, it could be said that those acts necessarily are volitional and intentional and, therefore, nonaccidental.[15] Nevertheless, it seems equally plausible to characterize actions taken in self-defense as, by their very nature, instinctive or reactive and, accordingly, unplanned and unintentional.[16] See *State Farm Fire & Casualty Co.* v. *Poomaihealani*, supra, 667 F. Sup. 708 (" '[t]he insured who acts in self-defense does so only as a *reaction* to his attacker' " [emphasis in original]); *Farmers & Mechanics Mutual Ins. Co. of West Virginia* v. *Cook*, supra, 210 W. Va. 403 ("[W]hen a policyholder is faced with a harm-threatening situation, the decision to defend one's self is not a choice. It is an instinctive necessity." [Internal quotation marks omitted.]); see also *Erie Ins. Group* v. *Buckner*, supra, 127 N.C. App. 409 (Timmons-Goodson, J., concurring) ("[t]he exigency of the circumstances necessitating one to defend oneself deprives one of any opportunity to calculate whether the actions taken in defense would result in injury to the attacker"). In the face of two equally plausible interpretations of an insur-

---

[15] This view is either explicit or implicit in the reasoning of the courts that have concluded that self-defense, although it perhaps provides a motive or justification for the performance of an otherwise unlawful act, does nothing to alter the intentional nature of that act. See, e.g., *State Farm Fire & Casualty Co.* v. *Marshall*, supra, 554 So. 2d 505; *Georgia Farm Bureau Mutual Ins. Co.* v. *Machett*, supra, 207 Ga. App. 590; *Home Ins. Co.* v. *Neilsen*, supra, 165 Ind. App. 451; *AMCO Ins. Co.* v. *Estate of Wehde*, supra, 2006 Iowa App. LEXIS *10; *Royal Ins. Co.* v. *Pinette*, supra, 756 A.2d 524; *Erie Ins. Group* v. *Buckner*, supra, 127 N.C. App. 408; *Cooperative Fire Ins. Assn. of Vermont* v. *Bizon*, supra, 166 Vt. 335.

[16] Pursuant to applicable provisions of our criminal code, one is justified in using physical force in self-defense only to protect oneself from physical force that is *already occurring or imminent*, and if the necessity of using physical force *cannot be avoided* with complete safety by retreating, surrendering property or complying with a demand to abstain from performing a nonobligatory act. See General Statutes § 53a-19 (a) and (b). Implicit in these conditions is the notion that acts of self-defense necessarily are undertaken with minimal internal deliberation.

ance policy provision, tenets of construction dictate that we rely on the one favoring coverage. See *Galgano* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 267 Conn. 519.

An alternative analysis for determining whether an "accident" has occurred is to view more broadly the circumstances that led to bodily injury. In *Jafari* v. *EMC Ins. Cos.*, supra, 155 Cal. App. 4th 894, the California Court of Appeals concluded that allegedly intentional conduct of an insured undertaken in self-defense was an "accident" within the liability coverage provision of an insurance policy because it was provoked by acts of a third party that were unexpected and unintended by the insured. The court reasoned that "an accident exists when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity." (Internal quotation marks omitted.) Id., 899. Thus, "acts in self-defense can be an 'accident' where the third party's actions provoking the self-defense response were the unforeseen and unexpected element in the causal chain of events making the insured's acts in self-defense unplanned and involuntary." Id. In short, "it is the unexpectedness of the third party's actions which creates the 'accident' within the meaning of the coverage clause." Id. In *Jafari*, the court was critical of taking a piecemeal approach: "It is not enough to parse out each party's actions and analyze them separately to determine whether an unexpected and unforeseen incident occurred. The provoking party's actions are an integral part of the overall incident." Id., 900. "Thus properly viewed, even deliberate acts of self-defense in response to unexpected, unforeseen and unintended events by the third party are 'accidents' " within the meaning of the policy, thus triggering coverage. Id.

We find the foregoing authorities persuasive and conclude that, regardless of whether we consider the inci-

dent narrowly or broadly, the term "accident," and, hence, the term "occurrence," encompasses actions taken by an insured in legitimate self-defense. Those actions, by their very nature, are spontaneous and unplanned. Moreover, by definition, they are prompted by unforeseen, dangerous circumstances warranting an immediate response. Because acts of self-defense are unplanned and unintentional, it follows that they are accidental within the meaning of the policy.

We turn next to the language of the intentional injury exclusion, which precludes coverage, even in the event of an occurrence, if the resulting bodily injury was "expected or intended by the insured." We agree with Brown that the plain language of the intentional injury exclusion, specifically, the inclusion of the phrase "by the insured,"[17] indicates that its application is triggered when the insured subjectively expects or intends that bodily injury will occur, and not merely when an ordinary, reasonable person would be able to foresee injury occurring as a result of his acts. Other courts have come to the same conclusion when construing identical or very similar language. As the Supreme Court of West Virginia explained, "under the intentional [injury] exclusion, courts generally look to the subjective intent of the policyholder—the policy language specifically says to determine if the loss was expected or intended *by the insured*. Construing the language of the exclusion . . . according to its plain, ordinary meaning, it is apparent that courts should not examine an intentional [injury] exclusion with an objective standard in mind—whether the resulting injury or damage was reasonably foreseeable to a reasonable person is largely irrelevant.

---

[17] " 'Insured' " is defined in the policy as, inter alia, "you and [certain] residents of your household . . . ." Moreover, pursuant to the policy, " 'you' " refers "to the 'named insured' shown in the Declarations . . . ." The term insured, therefore, denotes a specific class of persons comprised of Walukiewicz and the qualified individuals residing with him.

The question to ask is, [d]id *this* policyholder expect or intend the injury . . . ." (Emphasis altered; internal quotation marks omitted.) *Farmers & Mechanics Mutual Ins. Co. of West Virginia* v. *Cook*, supra, 210 W. Va. 400; see also *Smith* v. *Hughes Aircraft Co.*, 783 F. Sup. 1222, 1236 (D. Ariz. 1991) ("subjective interpretation is supported by the fact that the 'neither expected nor intended' language is followed by the phrase '*from the standpoint of the insured*' " and not "from the standpoint of a 'reasonable person' " [emphasis in original]); *Auto-Owners Ins. Co.* v. *Harrington*, supra, 212 Mich. App. 686 ("because the policy language is 'expected or intended by an insured person,' it is unambiguous and requires a subjective intent on behalf of the insured").[18]

[18] We reject the plaintiff's argument that the objective rule of intent used in tort and criminal law, on which the trial court relied, should control the interpretation of an intentional injury exclusion in an insurance contract. "[T]he presumption in tort and criminal law that a person intends the natural and probable consequences of his intentional acts has no application to the term expected or intended from the standpoint of the insured used in [a liability insurance] policy; the term expected or intended injury cannot be equated with foreseeable injury; and a purely subjective standard governs the determination of whether the insured expected or intended the injury." (Internal quotation marks omitted.) *Jackson* v. *State Farm Fire & Casualty Co.*, 661 So. 2d 232, 233 (Ala. 1995). "Determining whether an insured acts intentionally for purposes of insurance law is different than for purposes of tort law because there is no presumption in insurance law that a person intends the ordinary consequences of his actions." (Internal quotation marks omitted.) *Smith* v. *Hughes Aircraft Co.*, supra, 783 F. Sup. 1236.

Indeed, an objective inquiry would foreclose liability insurance coverage in a great number of negligence actions. For example, a driver may intend to make a left hand turn and do so of his own volition, then happen to strike a pedestrian crossing the road. Although the driver intended to turn, and it was objectively foreseeable that he would strike someone crossing his path, thus making him liable in negligence, liability insurance coverage nevertheless is not precluded unless the driver actually intended to hit the pedestrian. "Most, if not all, negligently inflicted injuries or damages result from intentional acts of some kind, but coverage still exists under normal [insurance] policy provisions if there was no intention to cause, by the commission of the acts, the resulting injuries or damages. . . . An insurance policy exclusion for a loss caused intentionally by an insured applies only when the insurance company is able to show that the insured acted for the purpose of causing the loss. . . . That is, the loss itself must be intended

Because the proper inquiry is a subjective one, the insured's subjective intent at the time of the occurrence, in particular, whether he was acting in legitimate self-defense, is determinative of whether the exclusion applies. When a person legitimately acts in self-defense, his primary intent is not to cause injury to another, but to prevent harm to himself. See *Transamerica Ins. Group* v. *Meere,* supra, 143 Ariz. 358; *Allstate Ins. Co.* v. *Novak,* supra, 210 Neb. 192–93; *Farmers & Mechanics Mutual Ins. Co. of West Virginia* v. *Cook,* supra, 210 W. Va. 402–403. "By definition, the intent of a person acting in self-defense is to protect himself." *Safeco Ins. Co. of America* v. *Tunkle,* supra, 997 F. Sup. 1360; see also General Statutes § 53a-19; *State Farm & Casualty Co.* v. *Poomaihealani,* supra, 667 F. Sup. 708–709. Accordingly, we conclude that the intentional injury exclusion does not preclude coverage for injuries resulting from legitimate acts of self-defense[19] because those injuries were not expected or intended by the insured.

Our conclusion today finds support in various policy considerations. First, the allowance of coverage for injuries resulting from legitimate acts of self-defense is wholly consistent with the policies underlying liability insurance. Specifically, "insurance companies set their premiums based upon the random occurrence of particular insured events. If a policyholder can consciously, deliberately control the occurrence of these events through the commission of intentional acts, the liability of the insurance company becomes impossible to

before the exclusion will apply." (Citations omitted; internal quotation marks omitted.) *Stoebner* v. *South Dakota Farm Bureau Mutual Ins. Co.,* supra, 598 N.W.2d 559.

[19] In the context of determining whether an intentional injury exclusion applies, whether an act of self-defense is legitimate is not predicated on whether the defendant's belief that the degree of force used was necessary is objectively reasonable, as it is in criminal cases raising the defense of self-defense. See, e.g., *State* v. *Clark,* 264 Conn. 723, 732, 826 A.2d 128 (2003).

define." *Farmers & Mechanics Mutual Ins. Co. of West Virginia* v. *Cook*, supra, 210 W. Va. 403; see also *Safeco Ins. Co. of America* v. *Tunkle*, supra, 997 F. Sup. 1359–60 ("[i]nsureds cannot be allowed through intentional or reckless acts to *consciously* control risks covered by policy, [or] the central concept of insurance is violated" [emphasis altered; internal quotation marks omitted]). Provisions such as the ones at issue make liability more predictable by "prevent[ing] individuals from purchasing insurance as a shield for their *anticipated intentional misconduct.* Without such an exclusion, an insurance company's risk would be incalculable." (Emphasis in original; internal quotation marks omitted.) *Farmers & Mechanics Mutual Ins. Co. of West Virginia* v. *Cook*, supra, 403.

Acts legitimately taken in self-defense, however, are by their very nature instinctive, spontaneous and unplanned. See footnote 16 of this opinion. Thus, "[w]hen the insured acts in self-defense, the insured is not in control of the risk of loss (injury). Instead, the insured is attempting to avoid a mishap that has been forced upon the insured. It is the fortuitous nature of an imposed situation of potential danger or harm upon an insured that provides the rationale for permitting self-defense to be an exception to the exclusionary clause." 18 E. Holmes, supra, § 123.1, p. 60. In light of the element of randomness, "[t]he risk that an insurance company bears . . . for an insured who . . . act[s] in self-defense is calculable and, from a monetary standpoint, minimal." (Internal quotation marks omitted.) *Farmers & Mechanics Mutual Ins. Co. of West Virginia* v. *Cook*, supra, 210 W. Va. 403; see also *State Farm Fire & Casualty Co.* v. *Poomaihealani*, supra, 667 F. Sup. 709.

Moreover, permitting coverage for injuries stemming from self-defense comports with public policy, as well as the reasonable expectations of the policyholder. The

intentional injury exclusion, in addition to its role as a risk control mechanism, is "designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will 'pay the piper' for the damages." *Transamerica Ins. Group* v. *Meere*, supra, 143 Ariz. 356; see also *Safeco Ins. Co. of America* v. *Tunkle*, supra, 997 F. Sup. 1360 ("[p]ublic policy forbids indemnifying willful wrongdoing" [internal quotation marks omitted]). The purpose of the intentional injury exclusion, however, "is not served by interpreting [it] to exclude coverage in self-defense situations where the insured is not acting by conscious design but is attempting to avoid a 'calamity' which has befallen him." *Transamerica Ins. Group* v. *Meere*, supra, 356. In fact, because "[w]illful wrongdoing vitiates the legal and factual concept of self-defense"; *Safeco Ins. Co. of America* v. *Tunkle*, supra, 1360; "self-defense is the very opposite of willful wrongdoing."[20] Id. Because acts of self-defense are not wrongful, it does not offend public policy to afford insurance coverage to the actor. Additionally, because acts of self-defense enjoy societal approval and are legally sanctioned, a policyholder reasonably would expect to be afforded liability insurance coverage in connection with those acts. See *Berg* v. *Fall*, supra, 138 Wis. 2d 121 ("we cannot assume the insured intended to bargain away coverage for acting in a manner immune from any criminal or civil sanction").

On the basis of the foregoing analysis, we conclude that the trial court improperly granted the plaintiff's two motions in limine on the reasoning that an objective inquiry as to intent to injure governed both the assessment of whether the events of April 15, 2002, constituted

---

[20] Although "[s]elf-defense requires an admission of acting in a certain way . . . the conduct admitted is not a violation of the law. [One claiming self-defense] is seeking a factual determination that certain conduct is legally justified. The primary intent is not to cause harm to another. A person acting only with the intent to harm another cannot claim self-defense." *Safeco Ins. Co. of America* v. *Tunkle*, supra, 997 F. Sup. 1360.

an "occurrence" and whether the intentional injury exclusion of the policy applied. As a result, the court improperly excluded relevant evidence as to the extent and nature of Brown's injuries and as to Walukiewicz' subjective intent, particularly, as to whether he was acting in legitimate self-defense when he grabbed Brown and tossed him from the porch. Moreover, the court improperly instructed the jury that it should apply an objective standard and that any evidence of self-defense was not relevant. Accordingly, further proceedings in this declaratory judgment action are necessary.[21]

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

---

[21] As noted previously in this opinion, the trial court's decision in the declaratory judgment action was directed only at the question of whether the plaintiff had a duty to indemnify Walukiewicz. In light of this court's subsequent reversal of the judgment against Walukiewicz in the negligence action and our remand of that matter for a new trial, the plaintiff argues that, in addition to upholding the trial court's judgment that it had no duty to indemnify Walukiewicz, we should conclude further that it has no duty to provide him a defense on retrial. Because we reverse the trial court's judgment relieving the plaintiff of the duty to indemnify, we reject the plaintiff's argument that we should conclude that it has no duty to defend Walukiewicz in a retrial of the negligence action. It is axiomatic that an insurer's duty to defend is much broader than its duty to indemnify and is triggered by the nature of the claims stated by the parties in their pleadings and not by an assessment of which party ultimately will prevail. See *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 274 Conn. 457, 463–64, 876 A.2d 1139 (2005); *Wentland* v. *American Equity Ins. Co.*, 267 Conn. 592, 600, 840 A.2d 1158 (2004).