MAURIZIO D. LANCIA *v.* STATE NATIONAL
INSURANCE COMPANY ET AL.
(AC 32987)

DiPentima, C. J., and Beach and Sheldon, Js.

Argued January 10—officially released April 10, 2012

*Samuel I. Reich*, with whom, on the brief, was *Anthony B. Corleto*, for the appellants (defendants).

*Frederick L. Murolo*, with whom was *Karen T. Murolo*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. The defendants, State National Insurance Company (State National) and First Mercury Insurance Company (First Mercury), appeal from the judgment rendered by the trial court in favor of the

plaintiff, Attorney Maurizio D. Lancia, on Lancia's claim of breach of contract based on the defendants' failure and refusal to defend him, under a liability insurance policy issued to his law firm, in four underlying actions stemming from his alleged involvement in certain real estate transactions.[1] The defendants claim on appeal that the court erred in determining that they have a duty to defend Lancia in the underlying actions because none of the claims presented in any such action falls within the scope of the insuring agreement under the policy, which extends only to claims arising out of Lancia's practice of law on behalf of his law firm, and all such claims are excluded from coverage under a policy exclusion that applies to claims arising out of Lancia's activities as an officer, director, partner, manager or employee of any business other than that of his law firm.[2] We agree with the defendants that all claims pending against Lancia in the underlying actions are excluded from coverage under the subject policy because, as pleaded, they unquestionably arise out of his activities as an owner of Royal Financial Services, LLC (Royal), a mortgage brokerage company. We thus conclude that the trial court's judgment must be reversed and this case must be remanded to that court with direction to render judgment in favor of the defendants, both on Lancia's claim of breach of contract and on the defendants' counterclaim for a declaratory

[1] The court also concluded that the defendants have a duty to indemnify Lancia. Because the parties have agreed that the stipulated judgment into which they entered, which is discussed herein, rests on our resolution of the court's determination of the duty to defend, we need not consider the court's conclusion regarding indemnification.

[2] The defendants also claim that the court erred in concluding that they have a duty to defend Lancia because the underlying claims are alleged to have arisen from legal services rendered by Lancia in connection with a business not covered by the policy that is owned by the insured or in which the insured is a partner or employee. Because we conclude that Lancia's claims for coverage fail on the basis of the exclusion discussed herein, we need not address the applicability of this additional exclusion.

judgment that they have no duty to defend Lancia in any of the underlying actions.

The following factual and procedural history is relevant to the issues on appeal. At all times relevant to Lancia's claims, his law firm, the Law Office of Maurizio D. Lancia, P.C., was the named insured under a professional liability insurance policy issued by State National. First Mercury serves as the claims adjuster for the policy. In 2007, Lancia was sued as a defendant in four separate civil actions stemming from his involvement in allegedly fraudulent real estate transactions: *McClardy* v. *Guzman*, Superior Court, judicial district of Hartford, Docket No. CV-07-5017594-S; *Sommers* v. *Guzman*, Superior Court, judicial district of Hartford, Docket No. CV-07-5018208-S; *Reynoso* v. *Guzman*, Superior Court, judicial district of Hartford, Docket No. CV-07-5017596-S; and *Zayas* v. *Velez*, Superior Court, judicial district of Hartford, Docket No. CV-07-5017928-S. Lancia notified the defendants of the filing of the four actions, but the defendants refused to defend him in any of them.

On April 8, 2008, Lancia instituted this action, alleging breach of contract based on the defendants' refusal to defend and to indemnify him in the four actions.[3] Lancia alleged that at least some of the claims brought against him in each underlying action arose out of his alleged conduct as a lawyer, and thus, that the defendants breached their contract by refusing to defend him in those actions. The defendants filed a counterclaim, seeking a declaratory judgment that, pursuant to an exclusion in the policy, they are not obligated to defend

[3] The plaintiff's initial complaint also set forth claims pursuant to the Connecticut Unfair Trade Practices Act and the Connecticut Unfair Insurance Practices Act. The plaintiff filed an amended complaint setting forth causes of action for breach of fiduciary duty and bad faith. On May 20, 2010, the plaintiff withdrew all of these claims, leaving only his claim for breach of contract.

Lancia in any of the underlying actions because all of the claims therein presented are alleged to have arisen out of his activities as the owner or principal of an entity other than the named insured.[4]

In February, 2009, Lancia filed a motion for partial summary judgment as to his breach of contract claim. In support of his motion, Lancia submitted, inter alia, a personal affidavit, in which he averred that, "[a]t all times during the relevant policy period I have only rendered legal advice and/or provided legal services as an attorney in connection with the Law Office of Maurizio D. Lancia, P.C. and not in connection with any other entity. In particular, the allegations in the underlying complaints reflect conduct on the part of the undersigned as an attorney describing legal services rendered in connection with the Law Office of Maurizio D. Lancia, P.C. and not in connection with any other entity." In April, 2009, the defendants filed an objection to Lancia's motion together with their own motion for summary judgment with respect to their counterclaim.

By memorandum of decision dated June 2, 2009, the court granted Lancia's motion, concluding that he had proven that there is no genuine issue of material fact that at least one of the claims made against him in each underlying action is alleged to have arisen out of his conduct as a lawyer for the Law Office of Maurizio D. Lancia, P.C. The court also concluded that the defendants had failed to meet their burden of proving that there is no genuine issue of material fact that none of the claims made in the underlying actions is alleged to have arisen out of Lancia's conduct as a lawyer acting on behalf of his law firm. The court thus denied the defendants' motion for summary judgment, finding that the defendants had failed to refute Lancia's averment that "he was working for the named insured when he

---

[4] See footnote 2 of this opinion.

committed the alleged wrongful acts." In December, 2010, the parties entered into a stipulation for judgment in favor of Lancia in the amount of $180,000, subject only to this court's later ruling on the defendants' present appeal from the trial court's June 2, 2009 decision on the parties' cross motions for summary judgment.

Our standard of review as to a trial court's decision to grant or deny a motion for summary judgment is well settled. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Brooks* v. *Sweeney*, 299 Conn. 196, 210, 9 A.3d 347 (2010). The party opposing summary judgment must present a factual predicate for his argument to raise a genuine issue of material fact. *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 250, 618 A.2d 506 (1992). "On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Brooks* v. *Sweeney*, supra, 210.

On appeal, the defendants claim that the court erred both in granting Lancia's motion for partial summary judgment and in denying their own motion for summary judgment. The defendants claim that the underlying

claims against Lancia do not fall within the scope of coverage under the policy is twofold. First, they claim that they do not owe Lancia a duty to defend him because none of the claims for which he seeks coverage is alleged to have arisen out of Lancia's conduct as a lawyer. Second, they claim that even if any of the underlying claims falls potentially within the scope of the insuring agreement, Lancia's conduct nonetheless is excluded from coverage under the policy because it is alleged to have arisen out of Lancia's activities as an officer, director, partner, manager or employee of a business other than that of his law firm, the Law Office of Maurizio D. Lancia, P.C. We conclude that all of the claims for which Lancia seeks a defense in the underlying actions are excluded from coverage under the policy because they are alleged to have arisen out of his activities on behalf of an entity other than his law firm. We therefore hold that the defendants have no duty to defend Lancia on those claims.

"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract . . . . In accordance with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance

policy is ambiguous when it is reasonably susceptible to more than one reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous." (Citations omitted; internal quotation marks omitted.) *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 5–6, 942 A.2d 334 (2008). "[T]his rule of construction . . . [also] extends to exclusion clauses." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 267, 819 A.2d 773 (2003).

"The question of whether an insurer has a duty to defend its insured is purely a question of law . . . ." *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 395, 757 A.2d 1074 (2000). "In construing the duty to defend as expressed in an insurance policy, [t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend. . . . If an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured. . . .

"[Our Supreme Court] has concluded consistently that the duty to defend means that the insurer will defend the suit, if the injured party states a claim, which,

qua claim, is for an injury covered by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact covered. The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is groundless. . . . Further, [i]t is well established . . . that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered. . . . An insurer, therefore, is not excused from its duty to defend merely because the underlying complaint does not specify the connection between the stated cause of action and the policy coverage. Thus, the relevant question is whether the party claiming coverage is an insured party in the capacity in which he was sued." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 274 Conn. 457, 463–64, 876 A.2d 1139 (2005). Although the burden to prove that a claim falls within a policy's coverage is on the insured, the insurer has the burden of proving that the claim for which coverage is sought falls within a policy's exclusion. *Schilberg Integrated Metals* v. *Continental Casualty*, supra, 263 Conn. 257.

In light of the foregoing rules and standards governing an insurer's duty to defend, an insured seeking summary judgment on a claim alleging breach of that duty must establish that there is no genuine issue of material fact that at least one allegation of the underlying complaint against him " 'falls even possibly within the coverage' " of the subject insurance policy. *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, supra, 274 Conn. 463. Such proof, which must be based exclusively on

the provisions of the policy and the allegations of the underlying complaint, need only concern, as a threshold matter, whether the claim is one for which coverage is provided under the insuring agreement of the policy, irrespective of the potential applicability to it of any policy exclusions.

To defeat an insured's motion for summary judgment on a claim for breach of the duty to defend, by contrast, or to prevail on its own motion for summary judgment on such a claim and/or on a counterclaim for a declaratory judgment that it has no duty to defend in the underlying action, the insurer must establish that there is no genuine issue of material fact either that no allegation of the underlying complaint falls even possibly within the scope of the insuring agreement or, even if it might, that any claim based on such an allegation is excluded from coverage under an applicable policy exclusion. In presenting countervailing proof, the insurer, no less than the insured, is necessarily limited to the provisions of the subject insurance policy and the allegations of the underlying complaint. Therefore, it is only entitled to prevail under a policy exclusion if the allegations of the complaint clearly and unambiguously establish the applicability of the exclusion to each and every claim for which there might otherwise be coverage under the policy.

An insured, in turn, may rebut an insurer's claim that it has no duty to defend him in light of an applicable policy exclusion by showing that at least one of his allegations, as pleaded, states a claim that falls even possibly outside the scope of the exclusion or within an exception to that exclusion. Unless the allegations of any such underlying claim fall so clearly and unambiguously within a policy exclusion as to eliminate any possibility of coverage, the insurer must provide a defense to its insured. See *Schwartz* v. *Stevenson*, 37 Conn. App. 581, 586, 657 A.2d 244 (1995).

The policy at issue provides that "[c]overage shall apply to any . . . CLAIMS arising out of the conduct of the INSURED'S profession as a Lawyer . . . ."[5] Although it is undisputed that Lancia is the owner and principal of the named insured, the Law Offices of Maurizio D. Lancia, P.C., the defendants claim that none of the underlying claims is alleged to have arisen out of Lancia's conduct as a lawyer practicing law on behalf of the law firm. Consequently, the defendants contend initially that they do not have a duty to defend Lancia in

[5] Specifically, the policy provides: "COVERAGE–PROFESSIONAL LIABILITY . . . The Company shall pay on behalf of any INSURED all DAMAGES in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any. Coverage shall apply to any such CLAIMS arising out of the conduct of the INSURED'S profession as a Lawyer, or as a Lawyer acting in the capacity of an Arbitrator, Mediator, Neutral, Title Insurance Agent, Notary Public, member, director, officer of any Bar Association, its governing board or any of its committees, or as a member of a formal accreditation, ethics, peer review, licensing board, standards review or similar professional board or committee relating to the practice of law."

The policy defines the term "INSURED" as:

"A. the NAMED INSURED;

"B. any past or present partner, officer, director, member of a professional association, stockholder, employee, independent contractor or of counsel of the NAMED INSURED, but only as respects professional services rendered on behalf of the NAMED INSURED;

"C. any lawyer listed in the application or added after the effective date that is a partner, officer, director, member of a professional association, stockholder, employee, independent contractor or of counsel of the NAMED INSURED as respects PROFESSIONAL SERVICES rendered by such individual while associated with a PRIOR LAW FIRM subject to the retroactive date endorsement;

"D. any lawyer who has retired from the NAMED INSURED, but only as respects PROFESSIONAL SERVICES rendered prior to the date of retirement and on behalf of the NAMED INSURED or a predecessor Firm;

"E. the heirs, executors, administrators and legal representatives of any INSURED in the event of any INSURED'S death, incapacity or bankruptcy, but only with the respect to PROFESSIONAL SERVICES rendered prior to such INSURED'S death, incapacity or bankruptcy and only to the extent that such INSURED would otherwise be covered by this policy."

any of the four underlying actions (*Sommers*, *Reynoso*, *McClardy* and *Zayas*). In order to determine whether such a duty exists, we must first examine the underlying complaint in each action to determine whether the allegations therein pleaded can be construed to complain of Lancia's conduct as an attorney.

The complaints in *Sommers* and *Reynoso* contain identical allegations as to Lancia in support of the following causes of action against him: breach of fiduciary duty; violation of the Connecticut Unfair Trade Practices Act; negligence; and conspiracy to defraud. In relevant part, they allege that Lancia was the owner of Royal and, in this capacity, was involved in "arranging and closing [their respective] loans and purchases of certain real estate." In paragraph 19 of the fourth count of Jennifer Sommers' complaint and paragraph 16 of the fifth count of Gabriela Reynoso's complaint, respectively,[6] which both plead claims for breach of fiduciary duty, Sommers and Reynoso allege that Lancia and Royal breached such a duty to them as their *mortgage loan brokers*.[7] Although the preface to the allegations

[6] Although the plaintiffs in the underlying litigation pursue various causes of action against Lancia, we focus our analysis on the cause of action that is first pleaded against him in each of the four complaints because the subsequent counts simply adopted the factual allegations of the initial claims and then set forth the legal basis for each alleged cause of action.

[7] Paragraph 16 of the fifth count of Reynoso's complaint is identical to paragraph 19 of the fourth count of Sommers' complaint. Paragraph 19 of the fourth count of Sommers' complaint alleges: "Said defendants Lancia and/or Royal, its agents [or] employees breached their fiduciary duty as mortgage loan brokers to the plaintiff in that:

"a. They obtained a more expensive loan with high fees and interest rates and onerous terms for purposes of enriching themselves at the plaintiff's expense and failed to shop their mortgage on the market;

"b. [They] had an interest in a higher property sale price and loan amount which was not disclosed and which resulted in negative equity and higher interest and monthly payments for the plaintiff;

"c. The defendant Lancia represented as an attorney the sellers in the sale of the properties, creating a direct conflict of interest by owning the plaintiff/buyer's mortgage origination company, and furthermore held a position with Elizabeth Athan Real Estate, the seller's real estate agent, the principals of which he had represented for many years;

of each such paragraph categorizes Lancia's alleged conduct as a breach of his duty to the plaintiff as a mortgage broker, subsection (c) of each such paragraph alleges that Lancia had a conflict of interest in the performance of that duty by representing the sellers in the same transaction as their attorney. Although neither Sommers nor Reynoso claims that Lancia's alleged misconduct occurred in his legal representation of either of them, the policy does not limit its coverage to claims based on Lancia's representation of his own clients. In their complaints, both Sommers and Reynoso further allege that Lancia "failed at any time to indicate to [either of them] that he did not represent [them] as an attorney even though he was the principal in [their] mortgage origination company."[8] They claim that Lancia breached his fiduciary duties to them by not ade-

---

"d. Defendants charged exorbitant fees and costs which damaged the plaintiff and led to monthly payments which were foreseeably beyond the plaintiff's ability to pay;

"e. Defendants and/or their agents for purposes of enriching themselves falsified information on loan applications and falsely represented to the plaintiff the terms of the loans/mortgages and conditions of the property upon which she relied;

"f. Defendant(s) had personal relationships with the seller and/or received proceeds from the sellers for the above market sale."

[8] Paragraph 20 of the fourth count of Sommers' complaint and paragraph 17 of the fifth count of Reynoso's complaint, allege the following: "In addition to the foregoing representations/breaches by defendant Guzman which were made in part on behalf of/for benefit of defendants Lancia and Royal, the plaintiff relied on representations/fiduciary duties from defendant Lancia which he breached in that:

"a. he failed at any time to indicate to her that he did not represent her as an attorney even though he allowed himself to be introduced to her as her attorney and confirmed that by, inter alia, personally taking her financial information;

"b. he failed to timely advise her as to the ramifications of executing mortgages for large amounts of money with large balloon payments, high interest rates, prepayment penalties and as to important terms which are required to be timely disclosed to a borrower by federal and state law;

"c. he failed to give her undivided duty of loyalty and investigate the propriety of the transaction for her as well as advance her interests in terms of mortgage terms/costs, options, property price/adjustment and other terms in the property purchase;

quately advising them of the potential ramifications of the transactions in which they were involved and failing to protect their interests in those transactions.

Jacqueline McClardy alleges the same causes of action against Lancia as do Sommers and Reynoso, using identical language to plead such claims. In addition, however, in paragraphs 18 through 20 of the fifth count of her complaint, she alleges that Lancia initially was introduced to her as her attorney, but thereafter acted inconsistently with that introduction.[9] In paragraph 21 of that count, McClardy, like Sommers and Reynoso, asserts that Lancia breached his fiduciary duties to her in that, inter alia, he never indicated to her that, despite being introduced to her as her attorney and taking her financial information, he was not, in fact, representing her.

By way of a forty-five count amended complaint, Luis Zayas alleges the following causes of action against Lancia: fraud, negligent misrepresentation, intentional

"d. he in fact at the closing represented the seller and/or had an interest in the real estate agency which was representing the seller thereby placing himself in direct conflict of the interest with the plaintiff whom he led to believe he represented as an attorney and whom he did represent as mortgage originator;

"e. he knew or should have known that Guzman had acted as a real estate agent towards the buyer and violated law and breached fiduciaries duties to the plaintiff and had failed to protect her interest and in fact had promoted the seller's interest at the plaintiff's expense and yet he ratified said unlawful conduct."

[9] McClardy alleges in relevant part: "18. Prior to the plaintiff's purchase of the two properties at 358 Vauxhall Street and 20-22 Lincoln Avenue, New London, the defendant Lancia met with the plaintiff at 349-351 Broad Street, New London, at which time defendant Guzman introduced defendant Lancia to the plaintiff as her lawyer for the closing.

"19. Defendant Lancia then agreed that he would be representing her and asked for her financial information for her loan application and stated that he would be helping her in the property purchase.

"20. At the closing for the properties, defendant Lancia was there and the plaintiff thought that defendant Lancia was representing her; however, only defendant Guzman discussed mortgage documents with her in Spanish."

misrepresentation and civil conspiracy. In count thirty of his complaint, in which he pleads his fraud claim, Zayas claims that Lancia had agreed to represent the seller in the subject real estate transaction. Zayas alleges that Lancia had knowledge of fraudulent activity by the seller, and, as a member of Royal, participated in and was complicit in that fraud, never disclosing it to him.[10]

In sum, in all four of the underlying complaints, it is alleged that Lancia provided legal representation to the

[10] Count thirty alleges in relevant part: "55. At all times mentioned herein, Attorney Lancia was and is a licensed attorney authorized to practice in the state of Connecticut. Attorney Lancia agreed to represent defendant Velez in the sale of the subject property.

"56. Defendant Lancia, as a member of . . . Royal . . . had specific knowledge that Royal . . . deliberately and intentionally made false representations and assurances to the plaintiff . . . to purchase the subject property so that the defendant could immediately receive the commission upon approval of the mortgage financing at closing.

"57. Defendant Lancia had knowledge that a representative of . . . Royal . . . submitted false documents to the mortgage company without the plaintiff's knowledge and knew the document submitted and representation made to the mortgage company were false in order to obtain mortgage approval.

"58. Defendant Lancia had specific knowledge that false representations were made and did not inform the plaintiff that they had submitted fraudulent documents through defendant Royal . . . in order to obtain approval of financing.

"59. Defendant Lancia had specific knowledge that the seller, defendant Velez, was selling the property to the plaintiff in the amount of $330,000 and that representations were made to the plaintiff that the property would be sold with no money down and 100 [percent] financing, when in fact that was not true.

"60. Defendant Lancia, as the attorney for defendant Velez, was present at the closing and represented the legal interest of defendant Velez for the sale of the subject property, and defendant Lancia had knowledge that various financial information represented in the HUD statement was false.

"61. Defendant Lancia had specific knowledge that the plaintiff did not purchase a property with 100 [percent] financing and that the plaintiff did not bring any funds to the closing in order to proceed with the purchase of the property and defendant Lancia further misrepresented documents at the closing in order to benefit from the transaction as a representative of . . . Royal . . . ."

sellers involved in the respective transactions, and in three of the complaints, it is alleged that Lancia failed to disclose to the plaintiffs that he did not represent them, thereby misleading the plaintiffs in those cases to believe that Lancia was, in fact, representing them as their attorney in those transactions. On the basis of the allegations set forth in the four underlying complaints, it is therefore *possible* that one or more of the allegations set forth in each complaint asserts conduct which *might* be construed to allege conduct by Lancia acting in his capacity as an attorney, thereby potentially triggering the defendants' duty to defend. Because we conclude, however, that the subject policy contains an exclusion that is unambiguously fatal to Lancia's claim for coverage on any of the underlying claims, we need not definitively determine whether any such claim arose out of his alleged conduct as a lawyer.[11]

The defendants claim that they do not have a duty to defend Lancia because the conduct that gave rise to the four underlying actions is excluded from the policy's coverage. Specifically, the defendants assert that the claims in the underlying actions are excluded from coverage under the policy because they are all alleged to have arisen out of Lancia's activities as the owner of Royal.

We begin by examining the exclusionary provision of the policy relied on by the defendants. The policy excludes from coverage, inter alia, the following: "[A]ny CLAIM arising out of any INSURED'S activities as an officer, director, partner, manager or employee of any company, corporation, operation, organization or association other than the NAMED INSURED or PRIOR LAW FIRM except as a member, director or officer of any Bar Association, its governing board or any of its committees . . . ."

---

[11] Similarly, we need not determine whether Lancia's claimed legal representation is alleged to have been rendered on behalf of the named insured law firm.

Lancia contends that although each of the underlying complaints alleges that he was the owner of Royal and sets forth claims against him in that capacity, the plaintiffs in those actions also allege activities on his part that have no connection with Royal. Our reading of those complaints belies this claim. Each of the underlying claims against Lancia is based on his alleged involvement in a real estate transaction in his capacity as the owner of and a mortgage broker for Royal. The underlying complaints are devoid of any allegations against Lancia that are not predicated on his role as a mortgage broker. Even if we were to construe Lancia's alleged conduct as the rendering of legal services, for which Lancia might otherwise be covered under the policy, any such conduct, as alleged, arises out of and is inextricably intertwined with his conduct as the owner or principal of Royal and his role as a mortgage broker. Thus, we conclude that the exclusion in the policy unambiguously establishes that the defendants do not have a duty to defend Lancia in any of the four underlying actions. Accordingly, the court erred in granting Lancia's motion for partial summary judgment and denying the defendants' motion for summary judgment.

The judgment is reversed and the case is remanded with direction to deny the motion for partial summary judgment filed by the plaintiff and to grant the motion for summary judgment filed by the defendants and to render judgment thereon for the defendants on their counterclaim.

In this opinion the other judges concurred.