DIMITRIOS KOUTSOUKOS, ADMINISTRATOR (ESTATE OF MELISSA A. KOUTSOUKOS) *v.* TOYOTA MOTOR SALES, U.S.A., INC., ET AL. (AC 33663)

Bear, Espinosa and Sullivan, Js.

Argued April 19—officially released August 28, 2012

*Jonathan J. Klein*, for the appellant (plaintiff).

*John J. Bogdanski*, with whom, on the brief, were *Mark J. Claflin* and *Kevin W. Hadfield*, for the appellees (defendants).

*Opinion*

BEAR, J. The plaintiff, Dimitrios Koutsoukos, administrator of the estate of Melissa A. Koutsoukos (decedent), appeals from the summary judgment rendered by the trial court in favor of the defendants, Toyota Motor Sales, U.S.A., Inc. (Toyota), and Crabtree Motors, Inc. (Crabtree), in this product liability action stemming from a fatal motor vehicle accident. The plaintiff claims that the court erred (1) by holding that, under the facts presented, an ordinary consumer cannot form his or her own expectations about the safety of a motor vehicle's front driver's side airbag, (2) by holding that the plaintiff cannot prove that the defendants' product was defective without the use of expert testimony and (3) by failing to find a genuine issue of material fact with respect to whether an airbag malfunction may have enhanced the

fatal injuries of the decedent. We affirm the judgment of the trial court.

The following undisputed facts and procedural history frame our analysis. In the early morning of April 9, 2006, the decedent, the plaintiff's twenty-four year old daughter, was involved in a fatal single car motor vehicle accident on the exit forty-nine south off ramp of the Merritt Parkway in Trumbull. At the time of the accident, the decedent was driving a 2006 Toyota Scion tC, which was manufactured by Toyota and sold to the decedent by Crabtree. It is undisputed that the Scion's driver's side bolster and curtain airbags deployed in the accident. The driver's side front airbag, however, did not deploy.

On April 9, 2008, the plaintiff, then self-represented, commenced this action.[1] The plaintiff's complaint alleges that the defendants are liable for the decedent's death pursuant to the Connecticut Product Liability Act, General Statutes § 52-572m et seq.[2] The complaint does not allege that a defect in the vehicle's airbag caused the accident itself. Rather, the complaint alleges that the defective condition of the vehicle's driver's side front airbag contributed to the fatal injuries sustained by the decedent during the accident.

On February 4, 2011, the defendants filed a motion for summary judgment arguing, in part, that expert opinion

[1] On August 27, 2008, counsel filed an in lieu of appearance on behalf of the plaintiff.

[2] Specifically, the complaint alleges that the decedent's vehicle was "in a defective and unreasonably dangerous condition in that it was subject to having its front airbags not deploy in a collision and could not be used without unreasonable risk of injury to [the decedent]." The complaint also alleges that the defendants failed to warn of the alleged defect, failed to warn adequately of the dangerous propensities of the vehicle's airbags, misrepresented that the vehicle was safe for use and failed to disclose the dangerous propensities of the airbags. In addition, the complaint alleges that the airbags were designed defectively and that the defendants breached implied and express warranties with regard to the vehicle.

was required to establish that, under the circumstances of this case, the failure of the driver's side front airbag to deploy constituted a product defect. Additionally, the defendants argued that the plaintiff failed to produce expert opinion addressing whether the failure of the driver's side front airbag to deploy caused or enhanced the injuries to the decedent.

On April 27, 2011, the court granted the defendants' motion for summary judgment, articulating its reasoning in a subsequently filed memorandum of decision. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiff challenges the summary judgment rendered in favor of the defendants. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Lancia* v. *State National Ins. Co.*, 134 Conn. App. 682, 687, 41 A.3d 308, cert. denied, 305 Conn. 904, 44 A.3d 181 (2012).

The plaintiff claims that the court erred "by holding that under the modified consumer expectation test of *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, [694 A.2d 1319] (1997), as applied to the particular facts of this case, an ordinary consumer cannot form his or

her own expectations of the safety of a motor vehicle's front driver's side airbag." Moreover, the plaintiff claims that the court improperly held that he could not prove that the defendants' product was defective without the use of expert testimony. Because, as framed by the plaintiff, these claims are closely related, we will address them together.

"To recover under the doctrine of strict liability in tort, a plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition. . . . For a product to be unreasonably dangerous, it must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." (Citations omitted; internal quotation marks omitted.) *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, 302 Conn. 123, 131, 25 A.3d 571 (2011).

Nonetheless, where complex products are concerned, "an ordinary consumer may not be able to form expectations of safety." *Potter* v. *Chicago Pneumatic Tool Co.*, supra, 241 Conn. 219. Generally, absent direct evidence of a product defect, "[i]f lay witnesses and common experience are not sufficient to remove [a] case from the realm of speculation, the plaintiff will need to present expert testimony to establish a prima facie case. See D. Owen, ['Manufacturing Defects,' 53 S.C. L. Rev. 851, 880 and n.183 (2002)] (citing cases in which expert testimony was required); cf. *Potter* v. *Chicago Pneumatic Tool Co.*, supra, [217–18]." *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*,

supra, 302 Conn. 141; see also *Keeney* v. *Mystic Valley Hunt Club, Inc.*, 93 Conn. App. 368, 375, 889 A.2d 829 (2006) ("expert testimony is required when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors" [internal quotation marks omitted]). The present matter presents such a case.

Attached to their motion for summary judgment, the defendants provided affidavits from multiple expert witnesses, including a mechanical engineer specializing in accident reconstruction and an engineer specializing in biomechanical analysis. The accident reconstruction expert's description of the crash sequence provides: "As the [decedent's] vehicle proceeded onto the ramp, the vehicle initially departed the roadway to the left; then re-entered the roadway and went into a clockwise yaw[3] (as viewed from above) as it traveled back to the right across the pavement. It crossed the travel lane and the breakdown lane and departed the right side of the roadway after having rotated to an orientation approximately perpendicular to the road. . . .

"As the vehicle left the right side of the roadway, the left side wheels firmly struck and jumped the asphalt curb and the clockwise yaw continued as the vehicle traveled onto the grassy shoulder. The front portion of the left side of the vehicle engaged a rising dirt embankment which accelerated its clockwise yaw and caused the vehicle to roll toward the driver's side. Now travelling in a rearward and a driver's side leading direction, the rear bumper, fender and upper rear portion of the occupant compartment struck a large boulder on the right-hand side shoulder. This impact redirected the vehicle back out toward the paved roadway and continued its clockwise rotation. Its front end and hood contacted a lamp post as it passed by, rotating to rest in the breakdown lane. . . .

---

[3] Yaw is defined as "an angular displacement from a straight line or course." Webster's Third New International Dictionary.

"The decedent was unbelted, and was ejected from the vehicle. Her body was found on the grassy median strip on the left side of the ramp, on the opposite side of the road from where the vehicle struck the rock."[4]

The accident reconstruction expert concluded that "given the direction and magnitude of this impact, it is neither surprising nor unexpected that the driver's side front airbag did not deploy in this accident sequence. The vehicle struck [a] boulder with the rear driver's side leading, and the angle and direction of this impact would not deploy the driver's front airbag which is designed and intended to deploy only in a frontal impact of significant magnitude. Given the force and angle of this impact, the airbag system functioned appropriately by deploying the side airbags and curtain shield airbags on the driver's side." The plaintiff did not provide any expert opinion in response to the averments of the defendants' experts to establish any genuine issue of material fact.

In support of his argument that expert opinion was not necessary in this case, the plaintiff cites to trial court cases where product liability claims involving allegedly defective airbags have survived summary judgment in the absence of expert opinion. We agree with the plaintiff that there are cases in which a product defect was deemed to be so obvious that expert opinion was not found to be required. See, e.g., *DeBartolo* v. *Daimler Chrysler Corp.*, Superior Court, judicial district of New Haven, Docket No. CV-03-0482725-S (December 22, 2005) (expert opinion not required where airbag failed to deploy during direct frontal impact when vehicle traveling at thirty to thirty-five

---

[4] The plaintiff stated at oral argument before this court that he does not "quarrel with" the accident reconstruction expert's account of the crash and, in fact, extensively quotes that expert's affidavit in his recitation of facts in his appellate brief.

miles per hour); *Vaccarelli* v. *Ford Motor Co.*, Superior Court, judicial district of Waterbury, Docket No. CV-99-0153308 (July 6, 2001) (expert opinion not required where airbag deployed during normal operation of vehicle, in absence of collision). We disagree, however, that the present matter presents a case in which the evidence, direct or circumstantial, of a defect is sufficient to obviate the need for expert opinion. This is not an accident "so bizarre that the average juror, upon hearing the particulars, might reasonably think: Whatever the user may have expected from that contraption, it certainly wasn't that." (Internal quotation marks omitted.) *Potter* v. *Chicago Pneumatic Tool Co.*, supra, 241 Conn. 222; cf. *Davis* v. *Margolis*, 215 Conn. 408, 416 n.6, 576 A.2d 489 (1990) (expert opinion not required in legal malpractice case where want of care so gross even a layperson can make that determination).

According to the evidence presented by the defendants, the motor vehicle accident that underlies the plaintiff's claim involved high initial speeds, significant vehicle rotation, multiple impacts, substantial vehicle deceleration and attendant physical forces. On the basis of our review of the record, we agree with the court's determination that whether or when the driver's side front airbag—one of multiple inflatable restraints installed in the decedent's vehicle—should have deployed under the circumstances of the accident is outside the ken of the average consumer's experience. Therefore, we find no error in the court's determination that the plaintiff was required to present expert opinion to establish a genuine issue of material fact concerning his claims about the driver's side front airbag in order to defeat the defendants' motion for summary judgment.

The defendants' experts opined that the airbag system in the decedent's vehicle functioned appropriately, deploying side bolster and curtain airbags, and that, based on the forces and impact angles of the accident,

the driver's side front airbag would not be expected to deploy. The plaintiff failed to present expert opinion rebutting these conclusions. Although the plaintiff disclosed a medical expert, H. Wayne Carver II, the state's chief medical examiner,[5] and offered his deposition testimony during the summary judgment hearing, we determine that the averments of the plaintiff's medical expert are insufficient to create an issue of material fact as to the presence of a defect or an unreasonably dangerous condition with respect to the driver's side front airbag. Specifically, we note that the deposition testimony of the plaintiff's expert primarily concerns issues related to cause of death and whether the nondeployment of the driver's side front airbag caused or exacerbated the fatal injuries suffered by the plaintiff's decedent. That testimony, however, does not address the issues of whether or when the airbag reasonably would be expected to deploy during the course of the accident.

Likewise, a police accident report attached to the plaintiff's objection to the motion for summary judgment indicating that the decedent's vehicle sustained front end damage is insufficient, in and of itself, to create a genuine issue of material fact as to the allegedly defective condition of the vehicle's driver's side front airbag. As noted, the issue of airbag deployment, under the circumstances presented, falls outside of the common experience of a juror. An accident report merely indicating front end damage to a vehicle does not establish reliably the forces and angles of impact that contributed to such damage, when and if the damage was sustained during the accident sequence, and whether

---

[5] The plaintiff's disclosure form provided that his expert witnesses were expected to testify regarding "[p]ast, present and future treatment of the plaintiff; causation; medical condition of the plaintiff; results of diagnostic tests; prognosis; qualifications." There was no disclosure of any expert witness to testify about the presence of a defect or an unreasonably dangerous condition with respect to the driver's side front airbag.

those forces would be expected to result in the deployment of the driver's side front airbag.

The plaintiff has failed to offer any expert opinion demonstrating that the subject airbag was defective, in design or operation, or demonstrating the absence of other identifiable causes of the alleged airbag defect in response to the defendants' averments that the airbag responded properly by not deploying on the basis of the force and angle of impact. Accordingly, summary judgment was appropriate in this case. See, e.g., *Balducci* v. *Hyundai Motor America, Inc.*, United States District Court, Docket No. 3:08CV00356 (AVC) (D. Conn. March 11, 2010) (summary judgment granted where defendants presented expert opinion that airbag's failure to deploy was not malfunction and plaintiff failed to rebut with own expert opinion), aff'd, 406 Fed. Appx. 517 (2d Cir. 2011); *Lisella* v. *Ford Motor Co.*, United States District Court, Docket No. 3:97CV2001 (DJS) (D. Conn. October 26, 1999) (summary judgment granted where defendant provided expert opinion regarding physics and occupant kinematics of accident and plaintiff failed to rebut with own expert testimony addressing defective design or operation of airbag).

Because we conclude that the court properly determined that the plaintiff failed to provide countervailing evidence, in the form of expert opinion, that was sufficient to establish a genuine issue of material fact regarding the presence of a defective or unreasonably dangerous condition, we need not address the plaintiff's additional claim concerning alleged enhancement of the decedent's injuries. The court properly granted the defendants' motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.