**ALLSTATE INSURANCE COMPANY,**
**Plaintiff,**

**v.**

**Scott JUSSAUME, Defendants.**

**Civil No. 3:13cv294 (AWT).**

United States District Court,
D. Connecticut.

Signed Aug. 5, 2014.

Christopher M. Vossler, Daniel G. Lydecker, Howd & Ludorf, LLC, Hartford, CT, for Plaintiff.

Christopher P. Anderson, Michael L. Anderson, Anderson Law Firm PC, Norwich, CT, for Defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

ALVIN W. THOMPSON, District Judge.

The plaintiff, Allstate Insurance Company ("Allstate"), filed this action seeking a

declaration that it owes no duty to defend or indemnify the defendant, Scott Jussaume ("Jussaume"), in an underlying action filed against Jussaume and others in Connecticut Superior Court by Richard Blanchard ("Blanchard") relating to an altercation between Blanchard, Jussaume, and others. Allstate has moved for summary judgment. For the reasons set forth below, Allstate's motion is being granted.

## I. FACTUAL BACKGROUND

Allstate issued a renter's policy to Jussaume covering the one year period beginning March 1, 2010 and ending March 1, 2011. During this covered period, on August 19, 2010, Jussaume was involved in an altercation at Thompson International Speedway (the "Speedway") with Blanchard and several others. Blanchard claims that he suffered as a result of this altercation, *inter alia*, injuries to his head, face, chest, body, and shoulders. On May 9, 2012, Blanchard filed a complaint in Connecticut Superior Court seeking damages for the injuries he suffered at the Speedway, and he filed an amended complaint on July 24, 2012 (the "Blanchard Complaint").

The Blanchard Complaint alleges twenty-one causes of action against fifteen defendants. The only counts pertinent to this action are the Eleventh Count and the Seventeenth Count. The Eleventh Count is captioned: *"ELEVENTH COUNT: (RICHARD BLANCHARD v. SCOTT JUSSAUME) (Intentional Act)"* and alleges:

1. On August 19, 2010, at approximately 9:30 p.m. the plaintiff, RICHARD BLANCHARD, a mini stock car driver, was packing his tools for the evening in the pit area and/or trailer area at Thompson International Speedway in Thompson Connecticut.

2. At the same time and place, the defendant, SCOTT JUSSAUME, was at the Thompson International Speedway pit area when he suddenly and without warning made contact with the plaintiff, thereby causing the plaintiff, RICHARD BLANCHARD to suffer the injuries and losses set forth more fully below.

3. The incident was caused by the intentional misconduct of the defendant, SCOTT JUSSAUME, in one or more of the following ways:

 a. he kicked the plaintiff;

 b. he struck the plaintiff with weapons; and/or

 c. he punched the plaintiff.

4. As a result of the intentional misconduct of the defendant, SCOTT JUSSAUME, the plaintiff, RICHARD BLANCHARD, suffered the following injuries, some or all of which may be permanent in nature:

 a. Concussion;

 b. Right elbow pain;

 c. Multiple right elbow scars;

 d. Facial contusions;

 e. Brain injury;

 f. Rib contusions;

 g. Chest pain;

 h. Head pain;

 i. Nausea;

 j. Memory loss;

 k. Headaches;

 l. Dizziness;

 m. Vertigo;

 n. Post-traumatic stress disorder;

 o. Depression;

 p. Sprain/strain of the lumbar area of his spine with associated pain and discomfort;

 q. Right shoulder tear requiring surgical intervention with associated pain and discomfort;

r. Right eye virteous detachment with associated pain and discomfort;

s. Left eye virteous detachment with associated pain and discomfort;

t. Right shoulder dislocation requiring surgical intervention with associated pain and discomfort; and

u. Pain and suffering, both mental and physical.

5. As a further result of the intentional misconduct of the defendant, SCOTT JUSSAUME, the plaintiff, RICHARD BLANCHARD, was forced to expend large sums of money for hospital and medical care, medicines, diagnostic tests and therapy, all necessary to his recovery, and may be forced to expend additional sums in the future.

6. As a further result of the intentional misconduct of the defendant, SCOTT JUSSAUME, the plaintiff, RICHARD BLANCHARD, was unable, and remains unable to participate in and enjoy his usual activities.

(Blanchard Complaint (Doc. No. 16–4) ("Blanchard Complaint"), at 44–46.)

The Seventeenth Count is captioned: "*SEVENTEENTH COUNT:* (RICHARD BLANCHARD v. SCOTT JUSSAUME) (Negligent Contact)" and contains language that is substantially similar to language in the Eleventh Count. (*Id.* at 59.) However, the third paragraph of the Seventeenth Count reads: "The incident was caused by the negligence of the defendant, SCOTT JUSSAUME, in one or more of the following ways: a. he negligently contacted the plaintiff." Additionally, every reference to "intentional misconduct" has been changed to "negligence". (*Id.* at 59–61.) Otherwise, the two counts are identical.

Jussaume's Allstate policy states, in pertinent part, that "Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy." (Pl.'s Local Rule 56(a)1 Statement (Doc. No. 16–1), at ¶ 16.) The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in bodily injury or property damage." (*Id.*) Additionally, the policy contains a number of exclusions, including a statement that Allstate

do[es] not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person. This exclusion applies even if:

a) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or

b) Such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

(*Id.*)

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d

1219, 1223 (2d Cir.1994). When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987). Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. · As the Court observed in *Anderson:* "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are crucial and which facts are irrelevant that governs." *Id.* Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990)). However, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trustees of Columbia University,* 131 F.3d 305, 315 (2d Cir.1997) (quoting *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## III. DISCUSSION

■■■ Allstate is seeking a declaration that it owes both no duty to defend Jussaume in the underlying action and no duty to indemnify Jussaume with respect to the underlying action. The Connecticut Supreme Court has repeatedly stated that an insurer's "duty to defend is considerably broader than the duty to indemnify." *DaCruz v. State Farm Fire and Cas. Co.,* 268 Conn. 675, 687, 846 A.2d 849 (2004) (collecting cases). Consequently, if a court determines that the insurer "ha[s] no duty to defend [the defendant] in the [underlying] action [this] necessarily means that [the insurer] also ha[s] no duty to indemnify [the defendant] in that action." *Id.* at 688, 846 A.2d 849. Therefore, the court discusses first whether Allstate has a duty to defend Jussaume in the underlying action.

■■■ Under Connecticut law, to prevail on its own motion for summary judgment ... for a declaratory judgment that it has no duty to defend in the underlying action, the insurer

must establish that there is no genuine issue of material fact either that no allegation of the underlying complaint falls even possibly within the scope of the insuring agreement or, even if it might, that any claim based on such an allegation is excluded from coverage under an applicable policy exclusion. In presenting countervailing proof, the insurer, no less than the insured, is necessarily limited to the provisions of the subject insurance policy and the allegations of the underlying complaint. Therefore, it is only entitled to prevail under a policy exclusion if the allegations of the complaint clearly and unambiguously establish the applicability of the exclusion to each and every claim for which there might otherwise be coverage under the policy.

*Lancia v. State Nat. Ins. Co.*, 134 Conn. App. 682, 691, 41 A.3d 308 (2012). Furthermore, the Connecticut Supreme Court has held that

[i]n construing the duty to defend as expressed in an insurance policy, "[t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer. must defend."

*Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 463, 876 A.2d 1139 (2005) (quoting *Bd. of Educ. v. St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 40–41, 801 A.2d 752 (2002)) (alterations in original). In other words, the "question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy." *Community Action for Greater Middlesex County, Inc. v. American Alliance Ins. Co.*, 254 Conn. 387, 395, 757 A.2d 1074 (2000).

 Additionally, "[i]f an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." *Moore v. Continental Cas. Co.*, 252 Conn. 405, 409, 746 A.2d 1252 (2000) (internal quotation marks omitted). "On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend." *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 354, 773 A.2d 906 (2001) (internal quotation marks omitted). Finally, "[w]hether an insurer is obligated to defend an insured is determined by the facts in the underlying complaint, and not the titles assigned to the particular causes of action." *Covenant Ins. Co. v. Sloat*, No. 385786, 34 Conn. L. Rptr. 687, 2003 WL 21299384, at *8 (Conn.Super. May 23, 2003) (internal quotation marks omitted). Therefore, the "inquiry into an insurer's duty to defend focuses on the facts alleged, not legal theories." *Id.* (internal quotation marks omitted).

 Allstate argues that the Blanchard Complaint does not allege facts establishing that Blanchard's injuries were the result of an "occurrence" under the policy's definition, and therefore Allstate has no duty to defend Jussaume. Although the policy defines "occurrence" as "an accident", it does not define the term "accident". In interpreting similar insurance policy provisions, the Connecticut Supreme Court has defined "accident" as " '[a]n *unintended* and unforeseen injurious occurrence;' 'an occurrence for *which*

*no one is responsible';* and 'an event of unfortunate character that takes place *without one's foresight or expectation.'* " *Allstate Ins. Co. v. Barron,* 269 Conn. 394, 408 n. 10, 848 A.2d 1165 (2004) (internal citations omitted) (emphasis in original). Similarly, in evaluating insurance policies that define "occurrence" as an "accident", this court has "interpreted the term · to encompass 'unintended, unexpected, or unplanned event[s].' " *Kemper Independence Ins. Co. v. Tarzia,* Civ. No. 3:11–cv–294 (JCH), 2012 WL 2327703, at *2 (D.Conn. June 19, 2012) (quoting *Middlesex Ins. Co. v. Mara,* 699 F.Supp.2d 439, 449 (D.Conn.2010)). "Therefore, 'occurrence' as defined in the [p]olicy does not include intentional torts or other intended actions, and the intent required is the intent to commit the specific act leading to the injury, not the intent to achieve a specific result." *State Farm Fire & Cas. Co. v. Mesniaeff,* Civ. No. 3:12–cv–1675 (VLB), 2014 WL 1154402, at *6 (D.Conn. Mar. 21, 2014). *See also Allstate Ins. Co. v. Smudin,* Civ. No. 3:07–cv–1679 (AWT), 2009 WL 890912, at *5 (D.Conn. Mar. 31, 2009) ("[T]he relevant inquiry here at the stage of determining whether there was an 'occurrence' is whether the event causing the injury was an accident, not whether the injury itself is accidental.").

There is no genuine issue of material fact as to whether any claim based on the allegations of the Eleventh Count of the Blanchard Complaint fails to even possibly fall within the scope of the coverage under the policy. An "occurrence" does not include intentional torts and other intended actions, but the Eleventh Count alleges that "[t]he incident was caused by the *intentional misconduct* of the defendant, SCOTT JUSSAUME...." (Blanchard Complaint, at 44.)

As to the Seventeenth Count of the Blanchard Complaint, "the insurer's duty to defend depends on whether the [underlying plaintiff] ha[s], in [his] complaint, 'stated facts' which bring the injury within the coverage [of the policy].' " *Allstate Ins. Co. v. Korytkowski,* No. CV044001464S, 2006 WL 1461121, at *4 (Conn.Super. May 9, 2006) (quoting *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.,* 274 Conn. 457, 463, 876 A.2d 1139 (2005)) (emphasis added). However, the Blanchard Complaint does not allege facts sufficient to create a genuine issue as to whether Blanchard's injuries were even possibly the result of an "occurrence" as defined by Jussaume's Allstate policy. It is immaterial that Blanchard has labeled one count against Jussaume as being based on an "intentional act" and another count as being based on "negligent contact"; what matters is whether the facts alleged in the Blanchard Complaint could possibly establish that Blanchard's injuries were caused by an occurrence.

The Seventeenth Count alleges that Jussaume "negligently contacted" Blanchard. It alleges further that the contact was made "[o]n August 19, 2010, at approximately 9:30 p.m." in the pit area of the Speedway. (Blanchard Complaint, at 59.) The Blanchard Complaint also alleges that "[o]n August 19, 2010, at approximately 9:30 p.m. another driver, crew members, and family members of the driver attacked [Blanchard] ... by repeatedly punching, kicking and beating him with weapons" while Blanchard was "in the pit area and/or trailer area" of the Speedway. (*Id.* at 1–2.) Thus, the language used in the Blanchard Complaint makes it clear that Blanchard is alleging in the Seventeenth Count that the negligent contact Jussaume made with Blanchard occurred "[a]t the same time and place" as the attack alleged in earlier counts. (*Id.* at 59.) Even reading the Blanchard Complaint in the light most favorable to Jussaume, the complaint fails to allege facts that could support a

conclusion that Blanchard's injuries were the result of an accident. The Blanchard Complaint merely alleges that, at the time Blanchard was being attacked by other defendants in the underlying action, Jussaume negligently contacted Blanchard. This falls well short of the requirement of *"stated facts* which bring the injury within the coverage [of the policy]", i.e. stated facts that could show that the injury arose from an accident; there is no fact alleged that could support the conclusion that the event causing the injury was an accident, as opposed to merely that the injury itself was accidental. *See Smudin,* 2009 WL 890912, at *5.

█ Jussaume argues that the acts that let to Blanchard's injury were, in fact, unintentional because they were the result of his attempts

> to help pull [a co-defendant in the underlying action] to safety and then to pull [another co-defendant] to safety. He testified that his sole focus was on [those two co-defendants] throughout the event. He is clear in his affidavit that he did not act in any way with intent to harm Blanchard.

(Def.'s Mem. Opp. Mot. Summ. J. (Doc. No. 22–2) ("Def.'s Mem."), at 8.) This argument is unpersuasive for several reasons. First, as mentioned above, "[i]n presenting countervailing proof, ... the insured[ ] is necessarily limited to the provisions of the subject insurance policy and the allegations of the underlying complaint." *Lancia v. State Nat. Ins. Co.,* 134 Conn.App. 682, 691, 41 A.3d 308 (2012), *cert. denied,*

305 Conn. 904, 44 A.3d 181 (2012). Therefore, Jussaume cannot properly look beyond the complaint and the terms of the policy to his deposition testimony or affidavit.[1]

█ The only exception to this rule, which was recently recognized, is for a claim of self-defense. In *Vermont Mut. Ins. Co. v. Walukiewicz,* 290 Conn. 582, 966 A.2d 672 (2009), the Connecticut Supreme Court considered whether an alleged act of self-defense could qualify as an "occurrence" under an insurance policy similar to the one at issue here. In deciding that it could, the Court stated that "an insurer's duty to defend is ... triggered by the nature of the claims stated by the parties *in their pleadings* and not by an assessment of which party ultimately will prevail." *Id.* at 602 n. 21, 966 A.2d 672 (emphasis added). Courts have since interpreted this language to allow a court to look to the underlying answer, as well as the complaint, to determine if a claim of self-defense is made. *See, e.g., Tarzia,* 2012 WL 2327703, at *3. This exception does not apply here, however, because Jussaume has not made a claim of self-defense. Furthermore, he has not directed the court to his answer to the Blanchard Complaint, but instead has cited only to depositions and an affidavit. Neither of these qualify as a "pleading" and thus cannot be a basis for invoking the exception as described in *Vermont Mut.* even if a self-defense claim was present. *See* Fed. R.Civ.P. 7(a).[2]

---

1. This is true even though the court is considering a motion for summary judgment. Although the defendant is correct that, in general, "the standard for deciding a summary judgment motion requires the court to review not only the pleadings, but the depositions and affidavits as well", (Def.'s Mem., at 7), as discussed above, in evaluating an insurer's

duty to defend the only pertinent documents are the complaint and the insurance policy.

2. Additionally, even assuming arguendo that it is proper for the court to look to statements made outside the Blanchard Complaint and the Allstate policy, and to accept Jussaume's statement that the only contact he had with Blanchard was in the process of pulling other

Therefore, the Blanchard Complaint does not allege facts sufficient to establish that Blanchard's injuries arose from an "occurrence" as defined by Jussaume's Allstate policy. Accordingly, Jussaume's acts are not covered by his Allstate policy and it is thus unnecessary for the court to consider whether the intentional action exception applies in order to determine that Allstate does not have a duty to defend. Furthermore, "[b]ecause the duty to defend is significantly broader than the duty to indemnify, 'where there is no duty to defend, there is no duty to indemnify ....'" *DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 688, 846 A.2d 849 (2004) (quoting *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 382, 773 A.2d 906 (2001)). Therefore, the court finds that Allstate similarly has no duty to indemnify Jussaume.

## IV. Conclusion

For the reasons set forth above, the plaintiff's Motion for Summary Judgment (Doc. No. 16) is hereby GRANTED.

The Clerk shall enter judgment in favor of plaintiff Allstate Insurance Company and close this case.

It is so ordered.

defendants away from or off of Blanchard, Jussaume's argument does not address how such actions qualify as an "occurrence" under the policy. Although Jussaume may not have intended to harm Blanchard, his own statements indicate that he acted intentionally—in that he intended to insert himself into the incident in order to remove others from the altercation. As discussed above, courts consider the intent to act, rather than the intent to harm, when evaluating whether an "occurrence" took place. Thus, Jussaume's own argument appears to establish that he did act with intent and not accidentally.